MARY KEEFE *vs.* BOSTON AND ALBANY RAILROAD
COMPANY.

Suffolk.   Nov. 11, 1885. — July 3, 1886.   DEVENS & GARDNER, JJ.,
absent.

A railroad corporation is liable for personal injuries occasioned to a passenger by the unsafe condition of the platform at a station, along which he was walking, after alighting from a train, for the purpose of leaving the station to go to his home, if the platform at that place was fitted and intended for the use of passengers, or was so arranged as to invite them to use it, although the corporation was under no obligation to furnish such a platform, and the proper mode of egress from the station to the nearest highway was in an opposite direction to that in which the passenger was going; and the fact that he intended, after leaving the platform, to cross the railroad at a place where he had no right to

cross it, does not make him a trespasser, or mere licensee, when and where he was injured.

In an action against a railroad corporation for personal injuries occasioned to a passenger by coming into collision with a baggage truck, while walking along the platform at a station, after alighting from a train, the questions whether he backed against the truck, or was struck by it, whether he or the servant of the corporation who was pulling the truck was in the exercise of due care, and whether the platform was properly lighted, are for the jury.

TORT for personal injuries occasioned to the plaintiff by the alleged negligence of the defendant. Trial in the Superior Court, before *Knowlton*, J., who allowed a bill of exceptions, in substance as follows:

It appeared in evidence that the plaintiff, on October 23, 1883, purchased a ticket at the station of the defendant corporation in Boston, for a passage over its railroad to Newton, the residence of the plaintiff, and took a train from Boston which arrived at Newton about twenty minutes past six o'clock on the same evening.

The plaintiff testified, that, upon her arrival at Newton, she left said train in company with her two daughters, stepped on to the platform of the defendant's railroad station at a point opposite the door of the ladies' room of said station, and proceeded directly over and along said platform in a westerly direction for the purpose of reaching her house in Newton; that while so walking along said platform, past the westerly shed thereon, she was suddenly struck, thrown from said platform upon the track of the railroad, and received the injuries complained of; that upon her arrival at Newton it was dark; that she saw no lights upon said platform, and heard no sign of warning before being struck; and that her eyesight and hearing were at that time ordinarily good.

Edward Downs testified that he was an expressman, and was at the defendant's station in Newton at the time of the accident to the plaintiff; that the baggage-master of the defendant was pulling a baggage truck laden with baggage, which had arrived on the same train with the plaintiff, over said platform, and the witness was walking behind said truck with his right hand on a tub of butter, and his left hand holding some express slips, which he was reading while stooping down; that there was on the platform a covered shed, and the truck, when it arrived at

the shed, came to a stop, and he saw the plaintiff on the track beside the truck; that it was dark at the time; that there was no light on the truck, which was about thirty inches wide; that there were on it a long, narrow trunk, a tub of butter, and some packages; that there was a gas-light at the end of the station, thirty-five or forty feet from the point of the accident; that the shed projected in front of said gas-light, and partially obscured the same; that there were no lights along or on the outside of the shed; that under the shed, which was fifty-five or sixty feet long, and at the westerly end of the same, some bags of wool were piled up; and that the platform was the platform used for passenger purposes in connection with the station.

Cornelius Keefe testified that there were no lights upon the outside of the shed; but that there were two lights under the same, about twenty-five feet from each end of the shed.

John Flood testified that there was one light at the corner of said station, as above described, but no lights on the outside of said shed.

Melvine Cox testified that he was baggage-master at said station on the day of the accident; that, while hauling the baggage truck of the defendant, laden with baggage, over the platform from the baggage car of the train to the baggage-room of the station, he stopped the truck, and the plaintiff came along backwards, and hit the trunk on the truck, and was thrown on to the track; and that the plaintiff, at the time of such collision, had three or four bundles in her arms.

William C. Emerson testified that he saw the plaintiff about twelve feet from the truck, with three or four bundles in her arms, moving backwards; that the truck was stationary, and, when the plaintiff reached the truck, she staggered and fell on it; that the truck at that time was nearly opposite the gas-light; that there were no lights on the outside of the shed; that there were two lights under the shed; that the width of the platform from the posts of the shed to the track, at the point of the accident, was about ten feet; and that there was no light on the truck.

Wallace Holbrook testified that he was baggage-master in the defendant's employ at Newton on the day of the accident;

that he was behind the truck when the accident happened; that it happened at a distance of from thirty-five to forty feet from the westerly end of the station; that the truck was stationary at the time of the accident, and passengers were passing between the truck and the outer edge of the platform; that, at the point of collision, there was light enough to enable a person to walk without running into any obstacle; that there was a light at the end of the station, and two lights under the shed, as above described; that the platform was twenty to twenty-five feet wide, and about ten feet wide from the posts of the shed to its outer edge, at the point of collision; that the truck was about thirty inches wide from wheel to wheel; and that the trunk projected beyond the edges of the truck.

Frank A. Baums testified that the truck was from ten to fifteen feet from the gas-light, at the time of the accident.

Sumner R. Edmand testified that he was a civil engineer in the defendant's employ; that between the station and the public highway, and on the platform, was a shelter shed supported on posts and open at the sides, and a baggage-house at the end of the shed; that on the west side of the station there was a similar shelter shed extending eighty feet westerly from the station; that the edge of the eaves of the shed is eight feet from the ground, coming within about six feet of the edge of the platform; that the platform extended two hundred and sixty feet westerly from the station; that the platform, being on the southerly side of the railroad track, did not connect with any public street southerly of the track, and there was no way for passengers going along this platform of getting out on the south side of the track without crossing the track and the grounds of the railroad; that the space between the shed and the west end of the station was about six feet, and the roof of the shed was a pitch roof unplastered, and by measurement the width of the platform between the shed and the track was ten feet; and that the platform was designed for the accommodation of all the public who land at the station.

Edmand further testified, and his evidence was uncontradicted, that the station-house was one hundred and twenty-one feet long, its easterly end being about one hundred and twenty feet from Centre Street; that a platform extended easterly from

the station-house to the baggage-house, the nearest corner of which was about seven feet from Centre Street; that, easterly and southerly of the station-house, the whole open space between the station-house and Centre Street was a concrete walk or drive for access between the station and Centre Street; and that the platforms about the station did not connect with any other street than Centre Street.

It was in evidence that the plaintiff lived on School Street, which lies north of Washington Street, the nearest street north of and parallel with the railroad; that the only way from the station to her house, by a public way, was from the station to Centre Street easterly, northerly along Centre Street to Washington 'Street, westerly along Washington Street to School Street, and northerly along School Street, which leads from Washington Street, at a point westerly of where an alley-way from the north side of the railroad reaches Washington Street.

It appeared that the plaintiff was moving, when hurt, westerly along the platform from the place where she alighted from the train, intending to cross the railroad at a point opposite the alley-way leading to Washington Street, where there was no planking or prepared crossing on the railroad, and there were no steps for obtaining access to the alley-way from the north side of the railroad.

It was in evidence that the shelter shed west of the station-house was sixteen feet wide; that the gas-lights under it were seven feet or a little less above the platform; and that the eaves of the shed were eight feet above the platform.

The judge, at the request of the defendant, ruled that there was no evidence on which the plaintiff was entitled to go to the jury; and directed a verdict for the defendant. The plaintiff alleged exceptions.

*T. J. Gargan,* for the plaintiff.

*A. L. Soule,* for the defendant.

FIELD, J. The principal contention of the counsel for the defendant is, that, " as soon as the plaintiff began her progress towards the west, for the purpose of crossing the railroad at a place not intended nor prepared for such use, she ceased to have any right to protection as a passenger, because the safe and proper way of egress for passengers was in the opposite direction."

There was evidence that the construction of the platform on the south side of the railroad, and the use made of it, were such that it was intended by the railroad company to be used by passengers, so far as was necessary or convenient for them in entering or leaving trains. The defendant's engineer testified that the "platform was designed for the accommodation of all the public who land at the station." The plaintiff cannot be considered as a trespasser, or a mere licensee, if, immediately on leaving the train, she chose to walk over the platform in the direction she was walking for the purpose of leaving the platform to go home, if the place where she was walking was fitted up and intended for the use of passengers. If the defendant was under no obligation to furnish such a platform, yet if it did furnish it, and arranged it in such a manner as to invite passengers to walk over it as they found it convenient while waiting for trains, or for conveyances to take them from the station, or while preparing to leave the station, it must exercise due care towards passengers found upon it. That the plaintiff intended in her mind, after she left the platform, to cross the railroad at a place where she had no right to cross it, is not conclusive against her right of action. She was not necessarily a trespasser, or mere licensee, when and where she was struck, because she intended afterwards to become either one or the other.

The well-known usages of railroad companies and of the public make it impossible to hold, as matter of law, that it was the duty of the plaintiff, immediately on leaving the cars at the station, to take the shortest practicable course to the nearest highway, and that, if she did not, she became a trespasser or licensee only. The defendant was bound to keep in safe condition for its passengers all that part of its stations and platforms where passengers were expressly or impliedly invited to go; and was bound, by its servants and agents, to exercise due care towards passengers using its station and platforms by its invitation. The point where the plaintiff intended to cross the railroad is supposed to be the same as that mentioned in *Wheelwright* v. *Boston & Albany Railroad*, 135 Mass. 225; but whether the plaintiff, in crossing, would have been a licensee or a trespasser, we think, is immaterial. The intention in her mind of crossing the railroad at a point where she had no right to cross had not become

an act, and she might never have acted in accordance with that intention.   She was still a passenger leaving the station of the railroad, and may have been walking upon a part of the platform intended for the use of passengers.

Whether the plaintiff backed against the truck, or was struck by it, whether she or the baggage-master of the defendant, who was pulling the truck, was, under the circumstances, in the exer⸱ cise of due care, and whether the platform was properly lighted, were questions for the jury.                *Exceptions sustained.*