# 𝔐𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

REED v. AXTELL & MYERS, RECEIVERS.

DECEMBER 8th, 1887.

Absent, Richardson, J.

1. RECEIVERS—*Suits against—Leave of court.*—A receiver cannot be sued elsewhere than in the court by which he was appointed, without leave, which rests in the court's discretion. Nor is this rule altered by the constitutional right to sue in the federal courts in certain cases. *Melendy* v. *Barbour,* 78 Va., 544.

2. PRACTICE IN CHANCERY—*Issue out of—Verdict.*—Court of chancery which has directed an issue to be tried, may set aside or approve the verdict.

3. RAILROAD COMPANIES—*Passenger—Unsafe platforms—Contributory negligence—Case at bar.*—Passenger upon alighting at the station, was shown by lamp-light up steps of platform into reception room, where a light was. The hour was late, and no other trains were to pass that night. After being shown into reception room, she declined offer of employee to conduct her to a hotel near by, preferring, as she said, to spend residue of night at the depot. And while depot lamp was being trimmed in her presence, she walked out upon platform, and without the precaution of ascertaining whether she could do so safely, turned at right angles and walked in the dark to the end of the platform, where she fell off and was injured:

HELD:
   She was guilty of contributory negligence, and cannot recover.

4. IDEM—*Duty.*—It is undoubtedly the duty of railroad companies to keep its stations and premises in such safe condition as that its passengers, in the exercise of ordinary care, can get upon, or leave the same, or go wherever they are expressly, or impliedly, invited to go thereon, without injury.

Appeal from decree of circuit court of city of Richmond,

rendered December 14th, 1886, in a petition for damages for negligent injuries, filed by Mrs. D. A. Reed against Decatur Axtell and Laurence Myers, receivers, in the suit in chancery, wherein Green & Bocock, trustees, are complainants, and the Richmond and Alleghany Railroad Company and others, are defendants.

The appellant, a citizen of the State of Indiana, filed her petition in the court below, alleging that on the 22d of July, 1885, she took passage on one of the trains of the Richmond and Alleghany railroad company, at the town of Lexington, intending to go to Bremo, a station on the same road; that upon the arrival of the train at Scottsville, which was about three o'clock in the morning of the next day, she left the train, intending to resume her journey, for the point of destination, a few hours thereafter; that upon leaving the train at Scottsville, she proceeded to the reception room for passengers in the depot building near by, it being then quite dark; that a little while afterwards, she went out on the platform in front of the reception room, and there being no sufficient light to enable her to see her way, she fell from the platform to the ground, a distance of several feet, in consequence of which she sustained serious bodily injuries. It was also averred in the petition, that all the franchises, property, rights, etc. of the said railroad company were in the hands of certain named receivers, appointed by an order of the said court, and accordingly the prayer of the petition was, that the petitioner be granted leave "to institute against the said receivers in any court of common law, having jurisdiction of the subject, such action" as she might be advised to be proper for the recovery of such damages as she had sustained by reason of her fall as aforesaid.

To this petition, the receivers filed their answer, in which they denied liability on their part to the petitioner, alleging that their "duty to the petitioner was fully performed when she was safely carried to Scottsville, and safely put off the train; that it was not their duty to provide accommodations

for passengers to spend the night, and that it was negligence on the part of the petitioner to walk upon the platform in the darkness." "It is true," the answer went on to say, "that there was no railing around the platform, and to have put one there, would have rendered it useless for the purposes for which it was built, namely, to transfer freight to and from the cars. And even if there was no light on the platform, that circumstance did not constitute a violation of duty on the part of these respondents, because it was not a time when a train was to arrive or depart, and it was not to be expected that passengers who had arrived would remain in the depot all night, as petitioner declared her intention to do, after an agent of these respondents had offered to conduct her to a hotel." Therefore, the answer concludes the petitioner was herself guilty of negligence, which caused the injuries complained of.

Upon the filing of the answer, the court directed an issue to be tried on the common law side of the court, to ascertain what damages, if any, the petitioner was entitled to recover. A jury was accordingly empanneled, and having heard the evidence, returned a verdict for the petitioner for $1,300 damages: and thereupon, the defendants moved the court to set aside the verdict, and for a new trial; but the motion was overruled. The court thereupon ordered that the verdict, and all the proceedings had upon the trial of the issue, be certified to the chancery side of the court, and also that it be certified that, in the opinion of the court, the verdict of the jury was contrary to the law and the evidence, which was accordingly done; after which the decree appealed from was entered, whereby the petition was dismissed at the costs of the petitioner.

*Edgar Allan, J. S. Parrish, James M. Donnan,* and *F. C. Moon,* for the appellant.

*Johnston, Williams & Boulware,* and *Christian & Christian,* for the appellees.

LEWIS, P., (after stating the case) delivered the opinion of the court.

The first assignment of error is, that "the circuit court erred in refusing leave to the appellant to bring her action at law in any court of competent jurisdiction, as she had the constitutional right (she being a citizen of the State of Indiana) to have her cause of action heard and determined in a federal court sitting in Virginia."

So far as the claim of a right to sue in a federal court is concerned, it may be remarked that no such right was specifically claimed in the court below; and if it had been the result would be the same. For there is no better settled proposition than that a receiver, as such, cannot be sued elsewhere than in the court by which he was appointed, without the leave of such court first had and obtained; and whether leave to sue will be granted, rests in the discretion of the court. This principle has been nowhere more emphatically asserted than by the supreme court of the United States in a number of cases, and by this court in the recent case of *Melendy* v. *Barbour,* 78 Va., 544. Indeed, such leave is essential to *the jurisdiction* of any other court, State or federal, in such a case. *Peale* v. *Phipps,* 14 How., 368; *Barton* v. *Barbour,* 104 U. S., 126. The doctrine, and the reasons upon which it rests, are so fully and clearly laid down in the cases just mentioned, that we deem it unnecessary in this connection to do more than simply to refer to those cases. They are decisive of the question here raised, and hence the first assignment of error is not well taken.

The second, third, and fourth assignments of error relate to certain instructions, some of which were given, and others refused, upon the trial of the issue, and will be considered together. The first and second of these instructions were offered by the appellant and were refused, and are as follows:

"1. The court instructs the jury that if they shall believe from the evidence that the plaintiff, being a passenger on the line of the defendant company, was left by the agents and servants of said company, in the night time, in their waiting-room for passengers, at Scottsville, and shall further believe that such waiting-room was not lighted so as to show the dangers, if any, of walking upon the platform in front of said waiting-room, then the failure to have the same so lighted, was such negligence on the part of the defendant company as to render them liable in this issue."

"2. The court further instructs the jury that in considering the question of negligence, they may take into consideration all the facts in regard to the accommodations provided for the reception and necessary comfort of female passengers in the waiting-room at Scottsville, and may also consider whether having a railing on the platform in front of said waiting-room would in any way have interfered with the freight business of the defendant company."

In respect to the first of these instructions, it is sufficient to say that it is open to the obvious objection that it makes no qualification for possible contributory negligence on the part of the plaintiff, and was therefore rightly refused. And the second was also properly refused, if for no other reason than that it is vague, and was calculated rather to confuse than to enlighten the jury upon the issues they were sworn to try. On the other hand, the instruction given by the court, and objected to by the appellant, correctly propounds the law, and was rightly given. It is in these words:

"The jury should find for the defendant, unless they believe from all the evidence that the accommodations provided by defendants for passengers arriving at Scottsville of ordinary intelligence and prudence were unsafe, or that on the night of the accident to the plaintiff, the defendant's agents were negligent in properly lighting the premises, and shall further believe that the plaintiff did not contribute to the accident by her own

negligence, or want of such care and caution as a reasonably prudent person should have exercised for his own protection."

This brings us to the consideration of the last and principal assignment of error, which is that the circuit court erred in setting aside the verdict of the jury, or rather in disregarding it and in dismissing the petition. And here it may be well to remark, before commenting upon the evidence which is made part of the record, that a verdict rendered upon the trial of an issue out of chancery, stands upon a very different footing from a verdict rendered upon an issue *devisavit vel non*, or in an action at common law—the reason being that in the former case, the issue is a mere incident of the proceedings, intended to satisfy the conscience of the chancellor, who may, therefore, approve the verdict or disregard it altogether, according to what, in his judgment, the law and the evidence in the particular case require. This is a familiar principle repeatedly recognized by this court. *Powell and wife* v. *Manson*, 22 Gratt., 177; *Lamberts* v. *Cooper*, 29 *Id.*, 61; *Snouffer's adm'r* v. *Hansbrough*, 79 Va., 166; *Fishburne* v. *Ferguson*, *ante.*, p. 87. See also, *Watt* v. *Starke*, 101 U. S., 247, which is an authority to show that a motion for a new trial of an issue out of chancery must be made to the court of chancery. And see to the same effect *Watkins* v. *Carlton*, 10 Leigh, 560; *Brockenbrough's ex'ors* v. *Spindle*, 17 Gratt., 21.

The action of the court, however, both as regards the awarding of an issue, and the verdict, when rendered, is reviewable on appeal, and the question here now is, whether upon the evidence before the jury the appellant is entitled to a decree in accordance with the verdict which was rendered in her favor.

The evidence is brief, and in our opinion establishes a state of facts, which fully sustains the action of the lower court. In other words, it shows that the negligence of the appellant was the proximate cause of the injuries she received, and therefore that she is not entitled to recover.

In her own deposition, she testifies that when she alighted

from the train at Scottsville, the only light by which she was lighted into the waiting-room was "the dim reflection from the passing train and the light in the agent's office, not sufficient to expose the platform." Yet she necessarily ascended the steps to the platform, and crossed the platform to get into the waiting-room. And upon the question of lights, she is flatly contradicted by her own witness and traveling companion, Mrs. Clark, who testifies as follows: "Mrs. Reed [the appellant] and I were helped off the train by the conductor, on the side next to the depot. He lighted us with his lantern into the waiting-room. There was one other light, which was just going out, and which the conductor took down and carried in when he showed us in. This light had been posted on the depot platform. There was a young man at the depot, whom the conductor told that the lamp ought to be trimmed, and he took it to trim it. There was a light in the depot besides." The same witness also testifies that a few minutes afterwards, and before the young man just mentioned had finished trimming the lamp, the appellant inquired of her if there was a lady's toilet-room in the building; to which she answered, she thought not: whereupon the appellant went out on the platform, which was not lighted, and walked in the dark to the end of it, where she fell off to the ground, a distance of several feet. The evidence also shows that the platform extended the whole length of the depot building, and that at the time of the accident, so much of it as was immediately in front of the waiting-room door was lighted by the light in the room.

Such substantially is the evidence on this point for the appellant. The conductor of the train, who was examined as a witness for the defendants, testifies that when the train reached Scottsville, he showed the ladies into the depot, and saw them seated; that they determined to stop over at Scottsville, because he told them that the train did not stop at Bremo, the station to which they wished to go. It appears that they were traveling on "a thousand mile ticket," and it is not pretended that they were informed when or before they took pas-

sage on the train at Lexington that it would stop at Bremo. It was an express train, and did not usually stop there. The conductor, however, testifies that just before getting to Scottsville, finding that the train would stop at Bremo, he notified the appellant and her companion of the fact, but that they adhered to their determination to stop over at Scottsville, and take the next train for Bremo, and accordingly stopped there.

The next witness for the defendants, M. S. Bowles, an employee of the company at Scottsville, testifies that after the ladies had been " lighted into the reception room " by the conductor, he offered to show them to the hotel, a short distance from the depot, but that they declined to go, saying they preferred to remain in the reception-room until the arrival of the next train, which was to pass between daylight and sunrise; that a short while afterwards he heard a noise outside of the depot, and going in that direction, he found the appellant lying unconscious on the ground, at the end of the platform. The same witness also testifies "that freight taken from the depot into the cars is not passed across the platform, it not being on the side of the depot next to the track, but that it is necessary for, and is constantly used in, receiving freight from wagons and delivering freight to wagons, though not at the door of the reception-room; that there was no railing around the platform or any part of it, and if there had been, it would have rendered the platform useless for the purpose for which it was designed, but that a railing in front of the reception-room would not have been in the way."

We have thus gone over the evidence chiefly relied upon as showing negligence on either side, and it shows, we think, that upon no just principle can the decree appealed from be reversed. The law undoubtedly imposes upon a railroad company the duty of keeping its stations and premises in such safe condition, as that its passengers, in the exercise of ordinary care, can get upon or leave the same, or go wherever they are expressly or impliedly invited to go thereon, without injury; and this embraces suitable steps and platforms, as well as suitable

lights. *Keefe* v. *Boston & Albany Railroad Co.*, 142 Mass., 251; 2 Wood Ry. Law, § 310, and cases cited. In the present case, however, the appellant has not exercised such care as entitles her to recover. The case, as disclosed by the record, is simply this: upon her alighting at the station, she was shown by the light of a lamp up the steps of the platform, and into the reception-room, where a light was burning. The hour was late, and no other trains were to pass the station that night. After being shown into the reception-room, she declined the offer of an employee of the company to conduct her to a hotel near by, preferring, as she said, to spend the residue of the night at the depot. And while the platform lamp was being trimmed—presumably from the evidence in her presence—she hurriedly walked out upon the platform, and without taking the precaution to inquire or ascertain whether or not she could safely do so, turned at right angles upon stepping upon the platform from the lighted reception-room, and walked in the dark to *the end of it*, where she fell off and was injured. This, all the circumstances considered, was not only negligence, but recklessness on her part, which clearly defeats a recovery.

It was contended in the argument that she went out to obey a sudden and urgent call of nature, but of this there is no positive proof in the record; and even if it were so, that could not affect her duty to take ordinary care in walking upon the platform or elsewhere upon the defendant's premises. It is unnecessary, therefore, to inquire whether or not it was the duty of the company to have provided a railing at the outer edge of the platform, or whether or not it has been negligent in any particular, since upon the ground of the appellant's negligence the decree must be affirmed. *R. & D. R. R. Co.* v. *Morris*, 31 Gratt., 200; *Dun* v. *S. & R. R. Co.*, 78 Va., 645.

HINTON, J., dissented.

DECREE AFFIRMED.