MARY A. EMERY v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.

October 25, 1899.

Nos. 11,762—(31).

**Personal Injury—Judgment notwithstanding Verdict—Evidence.**
Evidence considered, and *held* sufficient to justify the trial court in granting a motion for a judgment in favor of the defendant against the plaintiff, notwithstanding the verdict.

Action in the district court for Rice county to recover $10,000 for personal injuries.   The case was tried before Buckham, J., and a

77 M.—30

jury, which rendered a verdict in favor of plaintiff for $2,500. The court granted a motion for judgment in favor of defendant notwithstanding the verdict; and from a judgment entered pursuant to the order, plaintiff appealed. Affirmed.

*F. E. Latham* and *Thos. H. Quinn*, for appellant.

*W. H. Norris* and *F. W. Root*, for respondent.

BUCK, J.

The plaintiff brought this action to recover for personal injuries alleged to have been sustained by her by reason of the defendant's negligence in not having kept its platform well lighted at its depot at the village of Dundas, in this state.

The railroad at this place runs north and south. The depot building is situate upon the east side of the track. There is a platform extending along the west side of the depot, and extending north and south of it the whole length thereof, being 273 feet long and 8 feet wide. The portion of the platform directly west of the depot is 90 feet, and from the north end of the depot to the north end of the platform is 120 feet, at which point the platform is 23 inches above the ground, and here are located three steps, which run the full width of the platform, and this is the usual passageway for passengers going from the north to the depot and coming north therefrom. Upon this platform, between the north end of the depot and the north end of the platform, there is a stationary lamp post, with lamp, 10 feet from the corner of the depot, but it was not lighted at the time in question.

The plaintiff went to this depot on the night of the evening of January 11, 1898, with a relative, who intended to and did take passage on defendant's train. When plaintiff went to the train it was just getting dark, and she remained in the waiting room about 25 minutes. This room was lighted. After her relative got upon the train, plaintiff waited until the train pulled out, and she then started for her home, some three blocks away, over this platform, going north until she arrived at the north end thereof, when, instead of going down the steps at the end of the platform, she stepped off over these steps, and fell upon the ground, whereby she received the injuries complained of herein. Upon the trial she re-

ceived a verdict for $2,500, and upon a settled case the trial court, upon motion, ordered a judgment in favor of the defendant, and against the plaintiff, notwithstanding the verdict, and plaintiff appeals.

The defendant offered no evidence upon the trial except such as was drawn out by it on cross-examination, and practically there was no controverted evidence in the case. The plaintiff had been a resident of the village of Dundas since 1884, living about three blocks from the depot, and she testified that she had been upon the platform a good many times, both in the daytime and evening, and had been there often enough to know the platform and steps and all about them; that the north end of the platform, when she went there that evening, was not any different from what it had been when she was there before; that she was not in any hurry to get home, and was not afraid to be out at night. She was a woman 53 years of age, and had good eyesight. It did not appear that there was anything unusual to divert her attention, or anything exceptional in the character of the place of the injury or near there by which she was misled. She was familiar with the location and situation of the steps and north end of the platform, and in fact with the entire platform, and hence must have known the danger of walking off the north end of it in the darkness; for she testifies that it was the darkest night she ever knew. If so, the danger was proportionate to the darkness; but she made not the slightest effort to avoid danger, and secure her safety, for she testifies that she walked right along, and walked right off the end of the platform, and was thereby injured.

Now, one who was so familiar with the platform and its length ought to have known, and naturally would have known, when she arrived at or near the steps or end of the platform, and made some effort to have ascertained where they were; but this she did not do, and did not slacken her speed at all. Her sister-in-law got upon the cars about opposite the ticket office, and we assume that it was from that point that she started for her home, and, as she did so, went the same route as she came, as she says that she was the best acquainted with, and for many years knew, that route. She testifies that she intended to go to

the north end of the platform, and down the steps there located. Thus, she then had in mind the end of the platform and the steps, for they were the very point which she was aiming to reach. She further testifies that between the point where she left her sister-in-law and the north end of the platform there was a light; that there was a light near the depot, but whether it came from the depot, or from the lamp near the depot being lit, she could not say, although she says she could not see the floor or side of the platform. There was no defect in the platform or steps, and there is not a whit of evidence to show that she used any care or caution to avoid the danger of which she then knew; having known the situation for many years.

Thus far we have considered the case upon the plaintiff's own testimony, but her own witness, Moore, testified as follows:

"The platform at its north end was pretty dark. * * * It was dark enough for me to get along, I noticed. I couldn't say just exactly how dark. I could notice just a low glimmer of light through the window of the depot; just enough to show me as I was going along on the walk; just a slight light." Upon cross-examination he testified: "Q. And do you say, Mr. Moore, that it was light enough, from whatever source it came, so that you could and did determine when you arrived at the end of the platform? A. Well, I would know, certainly. I would know when I came to it. I would naturally throw out my foot, if it was so— Q. Did you have any difficulty in determining that you had reached the end of that platform? A. No, sir; not at all. Q. Was there any difficulty in seeing that you had reached the end of the platform, to you? A. No; I don't know as I could say that there was." Q. "Was there sufficient light to enable a person using ordinary care to see when he or she reached the end of that platform? A. Well, any one that was acquainted with the platform— Q. And using ordinary care? A. Using care, certainly would know when they came to it. Q. And could safely alight from that platform? A. I should judge so; yes. * * * Q. Was there any difficulty to a person, having good eyesight, and being familiar with that platform, knowing when he or she had reached the end of the platform? A. I think not."

We regard her acts not only negligent, but little short of reckless. It was her duty to use reasonable care in going to the end of the platform, and in finding the end thereof and the location of the steps, and take reasonable precautions to avoid stepping off the

platform over the steps upon the ground, and in not doing so she was guilty of such negligence as bars her recovery, whether the defendant was guilty of negligence in not keeping the platform properly lighted.

Judgment affirmed.

CANTY, J.

I concur in the result, on the ground that, in my opinion, the defendant was not guilty of negligence in maintaining its depot platform in the condition it was when plaintiff was injured.