STAMP v. EASTERN RY. CO. OF NEW MEXICO.

(Court of Civil Appeals of Texas. Amarillo. Nov. 10, 1913. On Motion for Rehearing, Dec. 13, 1913.)

1. CARRIERS (§ 286*)—CARRIAGE OF PASSEN- GERS—CARE REQUIRED.

A railroad company which maintains an unlighted and unguarded station platform elevated four or five feet above the ground is guilty of negligence towards its passengers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1142–1148, 1150–1152; Dec. Dig. § 286.*]

2. CARRIERS (§ 327*)—CARRIAGE OF PASSEN- GERS—CONTRIBUTORY NEGLIGENCE.

A passenger who, without being familiar with a railroad station, walks around the platform in the dark, without any particular precautions to avoid a fall, is guilty of contributory negligence barring recovery for injuries caused in a fall from the unlighted and unguarded platform.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1363–1366; Dec. Dig. § 327.*]

3. CARRIERS (§ 323*)—CARRIAGE OF PASSEN- GERS—CONTRIBUTORY NEGLIGENCE.

That a railroad company owes the highest degree of care to a passenger upon its premises will not excuse the contributory negligence of the passenger.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1346; Dec. Dig. § 323.*]

4. COMMERCE (§ 47*)—INTERSTATE COMMERCE —WHAT CONSTITUTES.

In case of a passenger traveling on a pass good from one point in the territory of New Mexico to another point, there is no interstate carriage or question of interstate commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 26; Dec. Dig. § 47.*]

5. EVIDENCE (§ 35*)—FOREIGN LAWS—PROOF —NECESSITY.

A foreign law is required to be proven just as any other substantive fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 35, 51; Dec. Dig. § 35.*]

6. EVIDENCE (§ 34*)—JUDICIAL NOTICE.

The courts will take judicial notice that before statehood the decisions of the Supreme Court of the United States were the law of the land in the territory of New Mexico.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 49, 50; Dec. Dig. § 34.*]

7. CARRIERS (§ 307*)—CARRIAGE OF PASSEN- GERS — CONDITIONS IN PASS AGAINST LIA- BILITY—VALIDITY OF CONDITIONS.

Where, before statehood, a railroad company in the territory of New Mexico gave plaintiff a pass for an intrastate trip, a condition in the pass exempting the company for all liability, whether caused by its own negligence or not, was valid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1252–1259, 1491; Dec. Dig. § 307.*]

8. CARRIERS (§ 307*)—CARRIAGE OF PASSEN- GERS—FREE PASS.

A pass given as a gratuity is none the less a free pass because the carrier requires the person using it to sign an agreement exempting it from liability for injuries.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1252–1259, 1491; Dec. Dig. § 307.*]

On Motion for Rehearing.

9. CARRIERS (§ 307*)—CARRIAGE OF PASSEN- GERS—FREE PASS.

A pass given by a railroad company to the mother of one of its employés is none the less a free pass because the giving of such pass was customary, where the employé could not have sued and recovered in case of the carrier's refusal.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1252–1259, 1491; Dec. Dig. § 307.*]

10. COURTS (§ 96*)—DECISIONS—PRECEDENTS.

The binding effect of decisions of the Supreme Court upon the territory of New Mexico was not changed by act of Congress of March 3, 1911,† providing that the amount in controversy, upon which the right to appeal to the federal Supreme Court depended, should be ascertained under oath; that being a mere matter of pleading and procedure.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 325, 327, 328, 334; Dec. Dig. § 96.*]

11. COURTS (§ 95*) — PRECEDENTS — RIGHT TO CHANGE.

While all courts may change their decisions, the court, in determining the law of a foreign state, must presume that an authoritative announcement of the law will not be changed.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 322, 323; Dec. Dig. § 95.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by Mrs. Annie Stamp against the Eastern Railway Company of New Mexico. From judgment for defendant, plaintiff appeals. Affirmed.

J. A. Stanford, of Waco, and Synnott & Underwood, of Amarillo, for appellant. Madden, Trulove & Kimbrough and F. M. Ryburn, all of Amarillo, for appellee.

HENDRICKS, J. The appellant, Mrs. Annie Stamp, a feme sole, sued the Eastern Railway Company of New Mexico in the district court of Potter county, Tex., alleging in substance that she was a passenger upon

appellee's line of railway, traveling from a point in New Mexico to a point in Texas, and while at a station of the appellee, and upon a part of the platform of said station intended for passengers, she fell from said platform at a point where it was about five feet in height from the ground, and that the railway company was guilty of negligence in failing to have the depot and platform properly lighted and in failing to have banisters or guard rails around the edge of the platform where she fell. The defendant railway company, among other things, pleaded the contributory negligence of the plaintiff in walking out upon the platform at a place where she was not required to go and in stepping off of the same without taking any precaution whatever for her own safety; defendant further specially answering that the injury to plaintiff occurred in what was then the territory of New Mexico, and that plaintiff at said time was in possession of a free pass, issued by it, with stipulations upon the back of same, agreed to and executed by her, whereby she released the appellee of all damages, whether caused by the defendant's negligence or otherwise, and agreed to assume all the risk of accident or damage to her person or baggage while in the use of said pass, and that plaintiff was at the time of her injury domiciled and residing in the territory of New Mexico, and that defendant had its domicile and line of railway in said territory, and that the rights and liabilities of the parties should be determined under the rules of law prevailing in the territory of New Mexico or in the United States courts, and that, under said rules prevailing in either jurisdiction, the said contract as to release from liability was valid and binding; the defendant further alleging that plaintiff was a mere licensee upon defendant's premises and the defendant owed her no other care than not to willfully and wantonly injure her. At the close of the testimony the district court instructed a verdict for the defendant railway company and entered judgment accordingly.

The evidence discloses that Mrs. Stamp, the appellant, was in the possession of the pass, through the solicitations of her son, who was a "pumper" and in the employment of the railway company at the station of Becker, where she was injured, and the following recitation appears on the reverse side of the pass, signed by her: "This pass is not transferable; it must be signed in ink by the holder named, who, by accepting it, agrees to assume all risk of accident and damage to person or baggage under any circumstances, whether caused by negligence of agents or otherwise. [I] accept the foregoing conditions. [Signed] Annie Stamp."

At the station where the injury occurred, the railroad track in front of the waiting room extended east and west and the depot was parallel thereto. The appellant, her son, and the latter's wife went to the depot in time to catch a train leaving for the east about 4:30 in the morning and walked into the waiting room at the east end of the depot, which was not lighted at the particular time, with a light only in the office of the agent or operator. Her son left the waiting room for the purpose of looking for the train, and Mrs. Stamp testified: That, after her son walked out, "I walked out on the platform myself. I do not know why I went out there. It was then dark and it was kind of cold and it had been raining the fore part of the night. * * * It was chilly and damp in the depot and one purpose was to walk around a little and exercise. I had no special motive in going out there. The door to the waiting room is right in the southeast corner. I walked out that door and I got turned around on the platform. I turned around the southeast corner. * * * I walked along the platform at the east end of the waiting room. I do not know how far I walked, I probably went to the edge, I did not think I did. * * * I turned then and started back toward the waiting room door. I went, I suppose, too close to the edge of the porch and fell off of it into the hole. There was no light on the platform at the time. I did not know that the platform was built up off of the ground. I did not know there was any jump-off there from the platform to the ground. I do not know whether I just walked right straight off the platform or not. I did not know how near the edge of it I. was. My left foot went off of the platform first. I turned going back with my side this way (we presume indicating), and that threw my left side to the outer edge of the platform. My left foot went off first. I do not know anything that happened after my foot went off of the platform." The son who accompanied Mrs. Stamp on this particular occasion testified in her behalf: "This platform extends somewhere about 30 feet from the east end of the depot."

The best we are able to ascertain from the testimony it seems that the platform at the east end of the depot was covered by a hood-shaped porch—a prolongation of the roof of the main building with arches and supporting pillars either at the edge or very close to the edge of the platform, where the accident and injury occurred.

[1, 2] We conclude that it was quite dark and for this purpose only, regarding her as a passenger under the law of this state, that the railroad company had not exercised the degree of care obligatory upon it under the circumstances. But we are inclined to think that this woman was guilty of contributory negligence. When she walked out of the door of the waiting room and turned at right angles and proceeded into the dark, along the platform of the appellee, the railway company, to the edge of the platform, precipitating herself off the platform to the ground, that inherently her act is indicative of a degree of carelessness and negligence as

to preclude a recovery. We quote from the Supreme Court of Virginia: "The law duly imposes upon a railroad company the duty of keeping its stations and premises in such safe condition as that its passengers, in the exercise of ordinary care, can get upon or leave the same, and to go wherever they are expressly or impliedly invited to go thereon, without injury; and this embraces suitable steps and platforms, as well as suitable light. Keefe v. Railroad Co., 142 Mass. 251, 7 N. E. 874; 2 Wood, Railway Law, § 310, and cases cited. In the present case, however, the appellant has not exercised such care as entitled her to recover. The case, as disclosed by the record, is simply this: Upon her alighting at the station, she was shown by the light of the lamp up the steps of the platform and into the reception room where a light was burning. The hour was late, and no other trains were to pass the station that night. After being shown into the reception room, she declined the offer of an employé of the company to conduct her to a hotel near by, preferring, as she said, to spend the residue of the night at the depot; and while the platform lamp was being trimmed, presumably, from the evidence, in her presence, she walked out upon the platform and, without taking the precaution to inquire or ascertain whether or not she could safely do so, turned at right angles upon stepping upon the platform from the lighted reception room and walked in the dark to the end of it, where she fell off and was injured. This, all the circumstances considered, was not only negligence but recklessness on her part, which clearly defeats a recovery. It was contended, in the argument, that she went out to obey a sudden and urgent call of nature, but of this there is no positive proof in the record; and, even if it were so, that could not affect her duty to take ordinary care in walking upon the platform or elsewhere upon the defendant's premises. It is unnecessary, therefore, to inquire whether or not it was the duty of the company to have provided a railing at the outer edge of the platform or whether or not it has been negligent in any particular." Reed v. Axtell, 84 Va. 231, 4 S. E. 587.

We also refer to the case of Gulf, Colorado & Santa Fé Railroad Co. v. Hodges, 24 S. W. 563, decided by the Court of Civil Appeals of the Second District. That court said: "It seems that the place where appellee fell from the platform was, at the time, enveloped in almost total darkness; that he [meaning the passenger] got off the train on the east side of the depot and immediately started in a northwest direction along the depot platform and walked off of it at a place where it was between four and five feet high." We also quote a part of the testimony quoted by the court in that case as follows: "I got on the platform so easy that I though I could leave it as easy. When I got to the top of the platform where I fell, I did not change my gait, but my right foot went out, and I did not touch the platform, and in consequence thereof I fell. I do not remember looking for the top of the platform. It was too dark to look for anything. * * * I was walking along regardless of everything, until I received the injuries. * * * I thought I was on level ground. * * * I was not thinking anything about steps but was walking as though I was going to some place; and the first thing I knew I fell off." The court concludes as a matter of law that: "It seems to us for a man 76 years old to proceed along a railroad platform in the dark, in the manner described, necessarily conveys the idea of negligence"—citing the Virginia case, supra, quoted from by us.

It is true that in the Hodges Case the passenger was attempting to leave the depot and the platform but, oblivious of his surroundings and the darkness enveloping him, regardless of his own welfare, without any precautionary measure on his part as to the situation in which he was placed, was injured, and the intrinsic culpability of the act was such as to ally itself to this case and the act of culpability manifested here.

[3] Because a railroad company may owe a higher decree of care than its passenger, upon whose premises the latter may be situated, does not, we think, tend to soften or destroy culpability upon the part of the passenger, if actually manifested. Contributory negligence, as a standard, should be the same, except, of course, that it may vary on account of the relationship existent between the parties. A servant may rely under certain conditions upon the master having done his duty, and the passenger may rely, as indicated in the Virginia case, upon the performance of the duty of the carrier. But this is not to be confounded with an act itself, as indicated in this record, where, although the duty may not have been performed, the passenger proceeds into the dark, with the degree of carelessness indicated here, and practically walks off the edge of the platform without knowledge of surroundings; surely such manifestations under such conditions do not constitute ordinary care.

[4-7] On the question of the free pass and the law of New Mexico becoming a part of the contract, one W. A. Havener testified that he had been practicing law in New Mexico for 24 years and was familiar with the statutes and decisions of the higher courts of New Mexico and said that: "There was no statute in reference to or that in any way affects provisions on passes, wherein plaintiff assumes all risks of injury from any cause and that defendant *in any event* (the emphasis is ours) be liable for any such injuries, whether caused by reason of negligence of the defendant or not; the consideration for said release being the issuance of said pass. This precise question has never been passed upon by the appellate courts of New Mexico so far as I know or have been

able to ascertain." The question evidently put to this witness was one of entire exoneration of the railway company as to liability for injuries in any event. He further said "that the question as to the validity of this release had never been passed upon by the courts of New Mexico"; that the federal courts, however, "announce the rule in this character of cause that such a release of liability is binding. They hold that, since the pass is a mere gratuity, the person proposing to use it has the opportunity to use it or reject it as he sees fit, and if he accepts it he accepts it with all its conditions; and the federal courts hold that a condition on the back of a pass releasing the carrier from liability, even for his own acts of negligence, is valid and enforceable." It will be remembered that this accident occurred when New Mexico was a territory; and this witness further stated that: "The principles and rules of law announced by the United States courts and the decisions announced by the United States Supreme Court would, of course, have been the supreme law for the territory. The rules of law announced by the United States courts relative to the validity of the conditions upon the pass referred to would control the decision of the question and the appellate courts of New Mexico concerning an accident happening at that time. It is a fact that, under the decisions of the courts of New Mexico, a party in possession of a gratuitous pass and having signed a release of liability, like this case, or similar thereto, would be considered a mere licensee while on the premises of the railroad company and would not be considered a passenger. * * * The railroad company owes no duty to a licensee other than not to willfully and wantonly injure him. That is, the railway company might be guilty of some degree of negligence, and yet if it had no knowledge that a licensee was in any danger, and therefore could not have knowingly and willfully caused injury, the railway company would not be liable for damages for any injury that might have resulted to him." The witness then quotes the substance of the case of Northern Pacific Railway Co. v. Adams, reported in 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513, wherein a passenger was riding upon a gratuitous pass, containing practically the same stipulations indorsed on the back of this pass, and which precluded a recovery upon the part of the passenger.

It is agreed in this case that the parties may resort to the decisions introduced in evidence; the appellant, of course, objecting to their admissibility upon the facts of this particular case. It is noted that the Supreme Court in that case held that, when the gratuitous transportation was extended, the company was not as to the passenger a carrier for hire, and that it waived its right as a common carrier to exact compensation and extended to him the privilege of riding in its coaches without charge if he would

assume the risks of negligence, and that the passenger was not in the power of the company and not obliged to accept its terms, and that if he desired to hold the railroad company to its common-law obligations, he should have paid his fare and compelled the company to receive and carry him, and, having freely and voluntarily chosen to accept the privilege offered, he cannot repudiate its conditions. This same witness also testifying in substance to the language herein used by us as to this opinion, with reference to which he also testifies was the law of New Mexico when this injury occurred and this pass was issued and delivered.

We do not see any question of interstate commerce involved, as the pass was from a point in New Mexico over a railroad in New Mexico to another point in New Mexico, or that the acts of Congress, upon a study of the same, which prevailed at that time, with reference to the issuance of free passes, would have any application to the case. Of course a foreign law is required to be proved as a substantive fact as any other matter of evidence. We are inclined to think, while not specifically decided, that we could take judicial knowledge of the fact that the decisions of the Supreme Court of the United States would be the law of the land in the territory of New Mexico at the time indicated. A perusal of the United States statutes at large and of the decisions of the Supreme Court of the United States indicate to such an extent the status of the territory as a component part of this nation, with its causes appealable to the Supreme Court of the United States, under the acts of Congress and the rules of that court regulated by the matter of amount as any other cause from the federal inferior court to the higher tribunal. Appellant answers that, the law of Texas being different, this testimony and the condition which arises in this record is not sufficient to overcome the presumption ordinarily existent that the law of another state upon the same subject-matter is the same as the law of our state. We believe that this condition is met in this record, and that the decision of the Supreme Court of the United States, with the additional testimony of this particular witness, settles as a fact the law of New Mexico existent at the particular time and which became a part of the contract between Mrs. Stamp and the railway company and should be applied in this forum.

[8] There is a statement in the brief of appellant that this is not a free pass and that conditions here place it in the domain of a contract and take it out of the domain of a gratuity. A close analysis of this evidence, we believe, does not warrant this position, and that, when it was shown that no money was paid for this intended transportation, we are unable to see, as measured by the rules of a contract applied to the testimony here, that a contractual obligation exists, based upon consideration flowing from

Mrs. Stamp to the railway company, and find that it is a mere gratuity.

Believing that the district court correctly disposed of the case, its judgment is affirmed.

## On Motion for Rehearing.

The appellant in this case attempts to distinguish between the facts which we concluded showed contributory negligence and the facts in the two cases, quoted by us in our original opinion for the purpose of sustaining that position. We did not intend to convey the suggestion that the two cases cited were "blanket" cases, in every respect similar to the cause under consideration. We thought they were similar to the extent as that the principle to be deduced therefrom, based upon the facts therein exhibited, with reference to the culpability of the plaintiff, were so analogous as to preclude a recovery. It is often hard for the briefmaker, as well as for the courts, in attempting to present a principle applicable to a record, to find a "receipt," so to speak, which would preclude discussion—to always have an absolute similitude of facts to sustain the position attempted to be maintained. In considering the cause on the original hearing, we thought then, and we are very strongly impressed now, that a careful consideration of the acts of the plaintiff concludes the cause. Neither the appellant nor the appellee has attempted to assist us with reference to the serious and important question of contributory negligence involved in this record by any citation of authorities; the former contended with a discrimination of facts and condemnation of the authorities and principles attempted to be invoked by us.

It may be that we have overlooked some authorities upon this question, but upon investigation we are inclined to think that, as to the direct question involved (this woman proceeding into the dark and stepping into unknown danger), the case of Buenemann v. Railway Co., 32 Minn. 390, 20 N. W. 380, decided by the Supreme Court of Minnesota, is rather in point in appellant's favor. In that cause the passenger was upon the platform of the railway company intending to take passage upon defendant's train, which had just arrived. He walked to the rear of the train for the purpose of obtaining a seat in the rear car, which, of course, was a legitimate purpose, and it appeared that he did not go further than was necessary. It seems that in this cause the passenger knew that the platform was elevated but the night was dark and there were no lights, with the exception of the lights in the building (the same as in this record), to light the platform or approaches. The Supreme Court of Minnesota said in that cause; "He was a stranger and was not familiar with the ground; but conceding, as we must, that he saw that it was dark and knew that the platform was elevated, and, as counsel say, ended some-

where, yet might he not assume, when he saw that the company had left the platform unlighted, that they would not leave a passenger coach so near the end of the platform as to endanger the safety of passengers who might be seeking to approach either end of the car." The court, however, further said: "So far as we can arrive at a conclusion from the imperfect manner in which the evidence is brought before us, we admit *we are personally strongly impressed with the idea that plaintiff was negligent* but by no means so clearly as to so hold as a matter of law against the verdicts of two juries and the opinion of both of the learned judges who presided at the respective trials in the court below"—and upon this history of this case this Supreme Court thought that these facts with reference to the action of the two juries and the trial judges in the court below was "entitled to some weight as tending to show that at least there is reasonable ground for a difference of opinion on the question." The first trial resulted in a verdict in favor of the plaintiff; and we presume the trial judges, on account of the great preponderance of the testimony, indicating contributory negligence, granted a new trial but permitted a second verdict to stand, which the Supreme Court sustained. It was with considerable misgiving and reluctance that the able court in that instance affirmed the judgment of the trial court; and there is apparent in that cause an element not existing in this record, as stated, that the passenger might assume that the railroad, in bringing its train into a depot, would not leave a passenger coach so close to the end of a platform as to endanger the safety of passengers who might be seeking to approach either end of said car. The passenger in that cause "was in the act of turning upon the platform when he missed his step and fell therefrom to the ground, having evidently in the darkness gone too near the edge," and which was the immediate act manifested by Mrs. Stamp here. If that court, impressed by the weakness of plaintiff's case and the strength of the proof of contributory negligence, reluctantly affirmed a judgment of recovery, based to some extent upon the verdict of two juries and the final action of the trial court, in overruling the motion for a new trial, what would have been its opinion if the trial court, had peremptorily instructed the jury, as in this cause, and the evidence had been the same? The contributory negligence in this record is grounded by us upon what we deem to be the heedless action of the appellant in walking near the edge of the platform in the dark, knowing that the same must end somewhere, without knowledge of surroundings.

We cite the case of Bennett v. Railway Co., 57 Conn. 422, 18 Atl. 668, by the Supreme Court of Connecticut, not upon the similitude of facts in that record to this cause, but for the applicability of an observation in that case upon an element we considered quite

potent and suggestive in this record. The appellant, Annie Stamp, in this cause testified that after proceeding upon the platform a certain distance, and while in the dark, she lost her bearings and became turned around, evidently not knowing the course that she was pursuing. In the Bennett Case, supra, it seems that plaintiff knew the premises, which, with the fact of passing three lighted stairways, distinguishes it from this cause, and knew that passengers were accustomed to indiscriminately use three of the stairways at the station, and passed the three which were lighted and missed his calculation in approaching the fourth, which was unlighted, and was injured. The court said; "He has now passed from a place of safety into one of great danger," and "the law, instead of being satisfied with slight care, requires the utmost care. Slight negligence became gross negligence, because none will be tolerated." We are not prepared to adopt this statement in full as a legal principle but think the following observation quite relevant and pertinent: "Every one knows how difficult it is in walking in utter darkness to correctly calculate courses and distances even in very familiar localities. The record does not disclose that any precautions were taken to know and keep in mind his whereabouts, except perhaps to reply upon his general knowledge of the premises, to inform him when he reached the stairs. If that is so, he was inexcusable." The court further said that the appellant in that cause disregarded "the instinct of self-preservation," and the darkness, coupled of course with the other acts of plaintiff, was a moving consideration, evidently, in the opinion of that Supreme Court in concluding contributory negligence as a matter of law.

We cite the case of Massey v. Sellar, 45 Or. 267, 77 Pac. 399, not wholly applicable, it is true, upon the facts, it being a case where a visitor was by invitation, and where the owner of premises had an unguarded elevator, and where the visitor had stepped aside and was seeking a water-closet in a dark corner. The observation of the court which we think pertinent is as follows: "Now, if it was so dark in there that he could 'see nothing,' it was certainly an act of folly on his part to enter on a cruise of exploration and discovery without determining whether it was safe to proceed. To bolt headlong into a place little known, and where the senses cannot take note of it, is not the act of a prudent man, and there is no chance for any other inference or deduction concerning it. Reasonable minds could not come to any other conclusion touching it, so there is nothing for the jury to determine," etc.

Also the case of Emery v. Railway Co., 77 Minn. 465, 80 N. W. 627, is cited, where a lady was a visitor upon the premises of the railway company and fell from the platform of the defendant upon her return home, after having accompanied a relative to the train, and was familiar with the platform, and, the court said, "hence must have known the danger of walking off the north end of it in the darkness, for she testified it was the darkest night she ever saw. If so, the danger was proportionate to the darkness; but she made not the slightest effort to avoid danger and secure her safety, for she testifies she walked right off the end of the platform and was thereby injured." We believe it will be readily understood, without attempting to discriminate, the purpose of the quotations and the limit of their applicability to the record here.

In regard to the matter of the foreign law and the question of a free pass concluding a recovery, the appellant again vigorously insists that the foreign law is not proven, and that further the pass on which appellant rode was not a free pass, and upon the latter question cites the following authorities: Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 870; Grand Trunk Ry. Co. v. Stevens, 95 U. S. 655, 24 L. Ed. 536; B. & O. Ry. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 774; Doyle v. Railway Co., 166 Mass. 492, 44 N. E. 611, 33 L. R. A. 845, 55 Am. St. Rep. 417; also s. c., 162 Mass. 66, 37 N. E. 770, 25 L. R. A. 157, 44 Am. St. Rep. 335; U. S. Statutes Annotated, Supplement of 1912, p. 114 (Act June 18, 1910, c. 309, § 7, 36 Stat. 547 [U. S. Comp. St. Supp. 1911, p. 1286]). The case of Railway Co. v. Stevens, supra, decided by the federal Supreme Court, was one where the plaintiff was the owner of a patented car coupling; the railway company, negotiating for its adoption as an appliance upon its road, had agreed to pay plaintiff's expenses if he would make a "joint errand for himself and the company," as the appellant expresses it, and the Supreme Court said: "His expenses in making that journey were to be paid by the defendant, and of these expenses the expense of his transportation was a part." Also holding the transportation an express contract: "The transportation of the plaintiff in the defendant's cars, though not paid for by him in money, was not a matter of charity nor of gratuity in any sense. It was by virtue of an agreement in which the mutual interests of the parties were consulted." "Drovers passes" are of course part of the consideration of the transportation and are also contracts.

[9] The case of Doyle, Adm'r, v. Railway, decided by the Supreme Court of Massachusetts, supra, involved a ticket or pass which was issued to the holder monthly, clearly in consideration and as a part of his employment. The facts of this case are explained by a reading of another case between the same parties, Doyle, Adm'r, v. Railway Co., the latter reported in 166 Mass. 492, 44 N. E. 611, 33 L. R. A. 844, 55 Am. St. Rep. 417, showing that the issuance of the transportation to the deceased was an express ingredient of the contract of employ-

ment, by virtue of which the defendant, by the issuance of this character of transportation, "was enabled to obtain the services of those who did not live in Boston* and thus draw its employés from a larger body, subject only to the expense of transportation, and the plaintiff's intestate was enabled to enter the defendant's employment on equal terms as to wages with those living in Boston," and held that "the ticket (in both cases) could not properly be regarded as a gratuity." This transportation is by virtue of a contract, express or implied, or lacks the elements of one; if there is no consideration to the company by virtue of such contract, there is no contract and it is in the nature of a gratuity.

In this cause, upon the whole testimony, we are unable to say that the mother was a dependent member of the family, if that was a requirement for the successful solicitation of a pass; nor that the custom to give passes to the employés, or rules to that effect, extended to the son for the benefit of his mother and was a part of the employment, express or implied; the proof is too uncertain. Could the son, upon refusal to issue the pass, have sued and recovered for the transportation if he had paid the fare for his mother under the proof here? We clearly do not think so.

[10] In this cause the appellant sues for $12,000. In the case of Sims v. Sims, 175 U. S. 162, 20 Sup. Ct. 58, 44 L. Ed. 117, the Supreme Court of the United States, with reference to appeals and writs of error to the Supreme Court of the United States from the Supreme Court of a territory, said: "Under the existing acts of Congress, therefore (except in the cases so transferred to the Circuit Courts of Appeals, and in cases of habeas corpus, cases involving the validity of a copyright, and cases depending upon the Constitution or a statute or treaty of the United States, none of which classes includes the case at bar), the appellate jurisdiction of this court 'to review and reverse or affirm the final judgments and decrees of the Supreme Court of a territory includes those cases, and those cases only, at law or in equity, in which 'the matter in dispute, exclusive of costs, shall exceed the sum of $5,000.' " With reference to the jurisdiction of the Supreme Court of the United States over causes upon appeal or writs of error from the Supreme Court of a territory, the statutes governing the matter, since the rendition of the opinion of the Sims Case, supra, have been modified by the additional prescription in procedure requiring ascertainment of the sum in dispute to be under oath; the last change directly applicable to New Mexico is indicated by the congressional act of March 3, 1911 (chapter 231, § 245, 36 Stat. 1158 [U. S. Comp. St. Supp. 1911, p. 229], Federal Statutes Annotated, vol. 1 [Supplement] p. 233), as follows: "Sec. 245 (writs of error and appeals from the Supreme Courts of Arizona and New Mexico). Writs of error and appeals from the final judgments and decrees of the Supreme Courts of the territories of Arizona and New Mexico may be taken and prosecuted to the Supreme Court of the United States in any case wherein is involved the validity of any copyright, or in which is drawn in question the validity of a treaty or statute of, or authority exercised under the United States, without regard to the sum or value of the matter in dispute; and in all other cases in which the sum or value of the matter in dispute, exclusive of costs, to be ascertained by the oath of either party or of other competent witnesses, exceeds the sum or value of five thousand dollars."

The matter of the ascertainment of the sum in dispute under oath as a condition of the jurisdiction of the Supreme Court of the United States is a mere matter of pleading and procedure and could not affect the proposition of the rule of law prevailing in New Mexico, as evidenced by the decisions of the Supreme Court of the United States in two cases.

[11] Appellant argues quite ingeniously that the law as announced by courts is subject to change, and on account of its mutability it should not overcome the presumption that the law of New Mexico is the same as we interpret it. True, the courts change their decisions, but the logic, pushing it to a forced conclusion, lands appellant upon the proposition that the rule of law decided in this state that the law of another state is presumed to be the same as ours is a fallacy, because our own courts may change the law at any time, when in reality it is a salutary rule where applicable.

The case of Boering v. Railway Co., infra, and the last case by the Supreme Court, uses very strong language in regard to a free pass, and we would not be any more at liberty in believing that that court would change its decision than that our Supreme Court would change its decisions when several years previously it had twice decided the same proposition. If we are correct and this transportation is not a contract, we think the law of this case as a part of the law of New Mexico is that introduced in evidence by appellee contained in the cases of Railway Co. v. Adams, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513, and Boering v. Railway Co., 193 U. S. 449, 24 Sup. Ct. 515, 48 L. Ed. 742, where transportation of this character was held to be gratuity. The case of Western Union Telegraph Co. v. Etta White, 162 S. W. 905, decided by us December 6, 1913, is clearly distinguishable from this case, patent upon reading the two cases, and does not apply. The question of diverse citizenship is not in this record. If this transportation was not based upon a consideration, the law of the Supreme Court of the United States is the law of this very case, and, if sued upon in New Mexico, we believe the result there would have been the result here. A further

inspection and consideration of the congressional act with reference to free passes causes us to reiterate that the same is not applicable to the record here.

The motion for rehearing is overruled.