NORTHERN PACIFIC RAILWAY COMPANY *v.* ADAMS.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 143. Argued January 25, 26, 1904.—Decided February 23, 1904.

When a railroad company gives gratuitously, and a passenger accepts, a pass, the former waives its rights as a common carrier to exact compensation; and, if the pass contains a condition to that effect, the latter assumes the risks of ordinary negligence of the company's employés; the arrangement is one which the parties may make and no public policy is violated thereby. And if the passenger is injured or killed while riding on such a pass gratuitously given, which he has accepted with knowledge of the conditions therein, the company is not liable therefor either to him or to his heirs, in the absence of wilful or wanton negligence.

A railroad company is not under two measures of liability—one to the passenger and the other to his heirs. The latter claim under him and can recover only in case he could have recovered had he been injured only and not killed.

A statute of Idaho reads as follows:·

"When the death of a person, not being a minor, is caused.

by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death; or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all the circumstances of the case may be just." Revised Statutes of Idaho, § 4100.

Jay H. Adams resided in Spokane, Washington. He was a lawyer and the attorney of several railway companies, though not in the employ of petitioner. He was a frequent traveler on petitioner's and other railways. On November 13, 1898, he with a friend started on one of petitioner's trains from Hope, Idaho, to Spokane. The train consisted of an engine and eight cars, those behind the express car being in the following order: smoking car, day coach, tourist sleeper, dining car, Pullman sleeper. All were vestibuled except the tourist sleeper immediately in front of the dining car. It had open platforms, as an ordinary passenger coach. Shortly after leaving Hope, Mr. Adams, then in the smoking car, went back to the dining car for cigars. To reach the dining car he passed through the day coach and the tourist sleeper. After buying cigars he left the dining car and went forward. This was the last seen of him alive. His body was found the next day opposite a curve in the railroad track about six miles west of Hope. There was no direct testimony as to how he got off the train, whether by an accidental stumble, or by being thrown therefrom through the lurching of the train which was going at a high rate of speed. The road from Hope to the place where the body was found is in Idaho. He was riding on a free pass, containing these provisions:

"CONDITIONS.

"This free ticket is not transferable, and, if presented by another person than the individual named thereon, or if any alteration, addition or erasure is made upon it, it is forfeited, and the conductor will take it up and collect full fare.

"The person accepting this free ticket agrees that the Northern Pacific Railway Company shall not be liable, under any circumstances, whether of negligence of agents or otherwise, for any injury to the person, or for any loss or damage to the property, of the passenger using the same.

"I accept the above conditions.

" JAY H. ADAMS.

"This pass will not be honored unless signed in ink by the person for whom issued."

This action was brought by the plaintiffs, the widow and son of the deceased, in the Circuit Court of the United States for the District of Washington. Verdict and judgment were in their favor for $14,000, which were sustained by the Court of Appeals for the Ninth Circuit, 54 C. C. A. 196; 116 Fed. Rep. 324, and thereupon the case was brought here on a writ of certiorari. 187 U. S. 643.

*Mr. Charles W. Bunn* for petitioner:

The verdict as to negligence rests on the most flimsy foundation, and the want of vestibules on the platforms of the tourist sleeping car was improperly submitted to the jury as a ground of liability. *Sansom* v. *Southern Railway*, 50 C. C. A. 53. There was no sufficient evidence that the real cause of death was either the lurching of the train or the want of a vestibule.

The jury were told they should *presume* Mr. Adams was crossing the platform with due care; and they were also allowed to *presume* that a lurch of the train threw him off. The verdict therefore rests not only on *presumption*, but on *two* presumptions, which in point of fact are not consistent with each other. *Reidhead* v. *Skagil County*, 73 Pac. Rep. 118; Wills on Circumstantial Evidence, 274; *Asbach* v. *Railway Co.*, 74 Iowa, 250; *Carruthers* v. *Railway Co.*, 55 Kansas, 600; *Wheelan* v. *Railway Co.*, 85 Iowa, 167; *Ruppest* v. *Railroad Co.*, 154 N. Y. 90.

The jury must not be left to mere conjecture, and a bare possibility that the damage was caused in consequence of the

negligence and unskillfulness of the defendant, is not suffi-
cient. *Searles* v. *Railway Co.,* 101 N. Y. 661, affirmed in
*Grant* v. *Railway Co.,* 133 N. Y. 659.

Where the evidence is equally consistent with either view—
the existence or non-existence of negligence—it is not compe-
tent for the judge to leave the matter to the jury. The party
who affirms negligence has failed to establish it. This is a
rule which never ought to be lost sight of. *Cotton* v. *Wood,* 8
C. B. (N. S.) 568; Thompson on Negligence, § 364; *Baulec* v.
*Railroad Co.,* 59 N. Y. 356; *Hayes* v. *Railway Co.,* 97 N. Y. 259;
*Railroad Co.* v. *Schertle,* 97 Pa. St. 450; *Wieland* v. *D. & H.
Canal Co.,* 167 N. Y. 19; *Wiwirowski* v. *Railway Co.,* 124 N. Y.
420; *Cordell* v. *Railway Co.,* 75 N. Y. 330; *Tyndale* v. *Railroad
Co.,* 156 Massachusetts, 503.

Conjecture cannot be allowed to supersede proof, and a jury
will not be permitted to conjecture how an accident occurred.
*Borden* v. *Railroad Co.,* 131 N. Y. 671; *Railroad Co.* v. *State,*
73 Maryland, 74; *Quincy, etc.,* v. *Kitts,* 42 Michigan, 34; *Steffen*
v. *Railway Co.,* 46 Wisconsin, 259; *Sorenson, Admr.,* v. *Paper
Co.,* 56 Wisconsin, 338; *Manning* v. *Railway Co.,* 105 Michigan,
260; *Finkelston* v. *Railway Co.,* 94 Wisconsin, 270; *Ellison*
v. *Receiver, &c.,* 49 Minnesota, 240; *Orth* v. *Railroad Co.,*
47 Minnesota, 384; *Hewitt* v. *Railroad Co.,* 67 Michigan,
61.

Deceased was riding on a pass issued as a gratuity and not
for a valuable consideration.

The contract on the pass was valid by the laws of Washing-
tion, where it was entered into. *Muldoon* v. *Seattle City Ry.
Co.,* 7 Washington, 528; *S. C.,* 10 Washington, 311.

In the Federal courts, however, the question is one of general
law. *Liverpool &c. Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397,
442; *Lake Shore Ry.* v. *Prentice,* 147 U. S. 101; *Hartford Ins. Co.*
v. *Railway Co.,* 175 U. S. 91.

Defendants in error can only recover in case deceased could
have recovered damages in an action for injuries in case death
had not ensued. *Munro* v. *Dredging Co.,* 84 California, 515,

527; *Klepsch* v. *Donald,* 4 Washington, 436, 444; *The Stella,* L. R. Pro. Div. 1900, 161.

Contributory negligence has been held a good defence even under statutes like the one in question not containing the express condition of Lord Campbell's act. *Quinn* v. *N. Y., N. H. & H. R. R. Co.,* 56 Connecticut, 44; *Lane, Adm'r,* v. *Cent. Iowa R. R. Co.,* 69 Iowa, 443; cases cited in note to § 66, Tiffany on Death by Wrongful Act. *Munro* v. *Dredging Co.,* 84 California, 515; *Chesapeake & Ohio R. R.* v. *Dixon,* 179 U. S. 131, are not in point.

As to the statement that a man cannot barter away his own life or freedom, it is a glittering generality. See *Balt. & Ohio R. R. Co.* v. *Voigt,* 176 U. S. 498.

The great weight of authority sustains the proposition that one who accepts a purely gratuitous pass can bind himself by contract to relieve the carrier from liability for personal injury. *Duncan* v. *Maine Central R. R. Co.,* 113 Fed. Rep. 508, 514; *Quimby* v. *Boston & Maine Railroad,* 150 Massachusetts, 365; *Griswold* v. *New York, etc., Railroad,* 53 Connecticut, 371; *Muldoon* v. *Seattle City Ry., supra; Gulf, Colorado & Santa Fé Ry.* v. *McGown,* 65 Texas, 640; *Rogers* v. *Kennebec, etc., Co.,* 86 Maine, 261; *Kinney* v. *Central R. R. Co.,* 34 N. J. L. 513, and the recent case of *Payne* v. *Terre Haute & Indianapolis Ry. Co.,* 157 Indiana, 616; *Roering and Wife* v. *Chesapeake Beach Ry. Co.,* Court of Appeals, District of Columbia, upon the present calendar of this court. See also article 57, Central Law Journal, p. 83.

*Mr. Reese H. Voorhees,* with whom *Mr. C. S. Voorhees* was on the brief, for defendants in error:

The contract on the back of the transportation alleged to have been used by the deceased at the time of his death, which purports to release the petitioner from all liability for injury to the person of the deceased, caused by the negligence of the petitioner, is void as against the plaintiffs, because they were not parties to such contract, and over *their* right of action

for loss to them, deceased could exercise no control, because the contract does not exempt the carrier from liability for death, and because the contract is void as against public policy.

Plaintiffs have an independent right of action for the losses to them occasioned by petitioner's negligence, which right of action the deceased could neither enjoy nor in any wise control.

The negligence of the petitioner, and the death of deceased occurred in Idaho. See Rev. Stat. Idaho, § 4100. As to right to maintain action under similar statute, see § 4828, Ballinger's Ann. Code and Stat. Washington.

These two statutes are for the exclusive benefit of the heirs, and are not for the benefit of the estate of the deceased. *Munro* v. *Dredging, etc., Co.,* 84 California, 515; *Noble* v. *Seattle,* 19 Washington, 133.

Lord Campbell's act, and the many acts inspired by it create and grant to other persons than the deceased or his estate, an independent right to recover for the losses sustained by such other persons through the negligence of a party causing death, such right of action being separate and distinct from any right of action which the deceased had, or could have enjoyed had he survived. *Blake* v. *Midland Ry. Co.,* 18 Q. B. 93; *S. C.,* 10 Eng. L. & Eq. 443; *Reed* v. *Great Nor. Ry. Co.,* L. R. 3 Q. B. 555; *Leggott* v. *Great Nor. R. Co.,* L. R. 1 Q. B. 599; *Robinson* v. *Can. Pac. R. Co.,* H. L. 1892; *Brown* v. *Chicago & N. W. R. Co.,* 44 L. R. A. (Wis.) 579; *Ches. & Ohio R. Co.* v. *Dixon,* 179 U. S. 131; *Martin* v. *Baltimore & Ohio Railroad,* 151 U. S. 673; *Hurlbert* v. *Topeka,* 34 Fed. Rep. 510; *The Oregon,* 73 Fed. Rep. 846; *Pym* v. *Railroad Co.,* 4 Best & S. 396; *Mo. Pac. Ry. Co.* v. *Bennett's Estate,* 47 Pac. Rep. 183; *Perkins* v. *N. Y. Central R. R. Co.,* 24 N. Y. 200; *Lincoln* v. *S. & S. Railroad Co.,* 23 Wend. 425; *Whitford* v. *P. M. R. Co.,* 23 N. Y. 467; *Adams* v. *Nor. Pac. Ry. Co.,* 95 Fed. Rep. 938; *Davis* v. *St. Louis, I. M. & S. Ry. Co.* (Ark.), 7 L. R. A. 283; *Jeffersonville Ry. Co.* v. *Swain,* 26 Indiana, 484; *Littlewood* v. *Mayor, etc.,* 89 N. Y. 27; *Western & A. R. Co.* v. *Bass,* 104 Georgia, 392; *S. C.,* 30 S. E. Rep. 874; *Vicksburg & M. R. Co.* v. *Phillips,* 64

Mississippi, 693; *S. C.*, 2 So. Rep. 537; *Hurst* v. *Detroit City Ry. Co.*, 84 Michigan, 539; *S. C.*, 48 N. W. Rep. 44; *Needham* v. *Grand Trunk Ry. Co.*, 38 Vermont, 294; *Bowes* v. *Boston*, 155 Massachusetts, 344; *S. C.*, 15 L. R. A. 365; *Commonwealth* v. *Met. R. R. Co.*, 107 Massachusetts, 236; *Donahue* v. *Drexler*, 82 Kentucky, 157; 56 Am. Rep. 886; *Fink* v. *Garman*, 40 Pa. St. 95; *The Onoko* (C. C. A.), 107 Fed. Rep. 984; *Roche* v. *Imperial Mining Co.*, 7 Fed. Rep. 703; *Re Mayo*, 54 L. R. A. 665; *Louisville &c. R. R. Co.* v. *Clarke*, 152 U. S. 240. As to effect of releases by the deceased, see *Sheriock* v. *Alling*, 44 Indiana, 197; *Hecht* v. *O. & M. Ry. Co.*, 32 N. E. Rep. (Ind.) 302; *Price* v. *Richmond & D. R. Co.*, 33 So. Car. 556; *S. C.*, 12 S. E. Rep. 413; *Hill* v. *Penna. R. R. Co.*, 178 Pennsylvania, 223; *S. C.*, 35 L. R. A. 196; *Lubrano* v. *Atlantic Mills*, 34 L. R. A. 797; Tiffany Death by Wrongful Act, 300, 329; *Doyle* v. *Fitchburg*, 162 Massachusetts, 66; *S. C.*, 25 L. R. A. 157; *Southern Bell Tel. &c. Co.* v. *Cassin*, 111 Georgia, 577; *S. C.*, 50 L. R. A. 694; *L. & N. Co.* v. *McIlwain*, 98 Kentucky, 700, distinguished, and see *Western & A. R. Co.* v. *Bass*, 104 Georgia, 392, and *Leg* v. *Britton*, 64 Vermont, 652; *Davis* v. *St. Louis, I. M. &c. Ry. Co.*, 7 L. R. A. (Ark.) 283.

There is a radical difference between injuries to the person and death. See cases cited *supra*, especially *Hurlbert* v. *City of Topeka*, 34 Fed. Rep. 510; *Missouri P. Ry. Co.* v. *Bennett's Est.*, 47 Pac. Rep. 183; *Needham* v. *Grand Trunk Ry. Co.*, 38 Vermont, 292; *Bowes* v. *Boston*, 155 Massachusetts, 344; *S. C.*, 15 L. R. A. 157.

The contract must be strictly construed and the exemption from liability for injuries cannot be extended to liability for killing. *Hinkle* v. *Southern Ry. Co.* (N. C.), 78 Am. St. Rep. 685; *Compania De Navigacion La Flecha* v. *Brauer*, 168 U. S. 119; *Clark* v. *Geer*, 86 Fed. Rep. 448.

Where two constructions are possible one of which leads to essentially evil results and the other is more consonant with reason and justice, the latter will be adopted. *Coughlan* v. *Stetson*, 19 Fed. Rep. 727; *Woodward* v. *Payne*, 16 California,

445; *Noonan* v. *Bradley,* 9 Wall. 394; *N. J. Steam Nav. Co.* v. *Merchants Bank,* 6 How. 383; *Mich. Cent. R. R. Co.* v. *Min. Springs Mfg. Co.,* 16 Wall. 318.

Even if the ticket showed that he was carried free, nevertheless the deceased was a passenger and entitled to the same degree of care as other passengers and as if he had paid his fare. *Phila. & P. R. R. Co.* v. *Derby,* 14 How. 485; *Steamship New World* v. *King,* 16 How. 469; *Waterbury* v. *N. Y. C. & H. R. R. Co.,* 17 Fed. Rep. 67.

The contract of exemption is void as against public policy. *Muldoon* v. *Seattle & City Ry. Co.,* 7 Washington, 528; *S. C.,* 10 Washington, 311, distinguished, as being brought by the party himself and not by his heirs.

The liability of a carrier of passengers for negligence is not a question of local or state law but is one of general law, upon which the Federal courts will reach a conclusion, independent of the ruling of any state court or courts. *New York Cent. Ry. Co.* v. *Lockwood,* 17 Wall. 357; *Balt. & Ohio R. Co.* v. *Baugh,* 149 U. S. 370; *Chicago M. & St. P. Ry. Co.* v. *Solan,* 169 U. S. 136; Chase's Blackstone (2d ed.), 72; *Ill. Cent. R. R. Co.* v. *Hammer,* 72 Illinois, 350; dissenting opinion in *Wells* v. *N. Y. Cent. R. R. Co.,* 24 N. Y. 194. One cannot bind himself by relinquishing the safeguards with which the law surrounds his life. *Cancemi* v. *The People,* 18 N. Y. 129.

A man may not barter away his life or his freedom or his substantial rights. *Home Insurance Co.* v. *Morse,* 20 Wall. 445; *Doyle* v. *Continental Ins. Co.,* 94 U. S. 535; *Warnock* v. *Davis,* 104 U. S. 775. The State protected its interest in human life by making suicide felony at common law. Negligent killing was manslaughter at common law and indictable. Chase's Blackstone's Com. (2d ed.), 937, 940; 1 East P. C. p. 262, § 38; Story on Bailments, § 601*a.*

The obligation on a common carrier for the safety of the passengers does not grow out of contract; the State, the law, and public policy, impose it as a general rule. *Phila. & Reading R. R. Co.* v. *Derby,* 14 How. 485; *The Steamboat New World* v.

*King,* 16 How. 469; *Cleveland, P. & A. R. R. Co.* v. *Curran,* 19 Ohio St. 1; *S. C.,* 2 Am. Rep. 365; *The E. B. Ward,* 16 Fed. Rep. 261; *Chicago, M. & St. P. R. R. Co.* v. *Solan,* 169 U. S. 135; *Inman* v. *So. Car. R. R. Co.,* 129 U. S. 139; *The Kensington,* 183 U. S. 268; *Oscanyan* v. *Arms Co.,* 103 U. S. 261; Ray on Contractual Limitations, 2.

The exact question at issue here that a contract, made with a person carried free, exempting the carrier from liability for injury caused by the carrier's negligence, was void as against public policy has been raised in *Vette* v. *Harmon,* 102 Fed. Rep. 17; *Jacobus* v. *St. Paul & Chi. Ry. Co.,* 20 Minnesota, 125; *S. C.,* 18 Am. Rep. 360; *Railroad Co.* v. *Hopkins,* 41 Alabama, 486; *S. C.,* 94 Am. Dec. 607; *Gulf, Col. & S. F. Ry. Co.* v. *McGown,* 65 Texas, 640; *Penn. R. R. Co.* v. *Butler,* 57 Pa. St. 335; *Rose* v. *Railway Co.,* 39 Iowa, 246; *Railroad Co.* v. *Henderson,* 51 Pa. St. 315; *Roesner* v. *Herman,* 8 Fed. Rep. 782; Wharton on Negligence, 589, 592, 641; *Baltimore, O. &c. R. R. Co.* v. *Voigt,* 176 U. S. 494; *Grand Trunk* v. *Stevens,* 95 U. S. 655; *Balis* v. *Old Colony R. R. Co.,* 147 Massachusetts, 255, distinguished. A common carrier may not be divested of its character as such by special contract. *Bank of Kentucky* v. *Adams Exp. Co.,* 93 U. S. 174; *Woodburn* v. *Railroad Co.,* 42 Am. & Eng. R. R. Cas. 514; *Kinney* v. *Cent. R. R. Co.,* 32 N. J. L. 407, distinguished.

The duty owing by the carrier is a public duty; it does not grow out of private contract with each individual carrier, but is imposed for the welfare of the public. *Grand Trunk Ry.* v. *Stevens,* 95 U. S. 655; *Chicago, M. & St. P. R. Co.* v. *Solan,* 169 U. S. 135; *Munn* v. *Illinois,* 94 U. S. 113; *United States* v. *Joint Traffic Assn.,* 171 U. S. 505; *Rose* v. *Des Moines Val. Ry. Co.,* 39 Iowa, 246.

Mr. Justice Brewer, after making the foregoing statement, delivered the opinion of the court.

As the negligence of the company, found by the jury to have

caused the death, as well as the resulting death took place in Idaho, the plaintiffs' right of action rests on the statute of that State. What is the scope and meaning of that statute? The Circuit Court charged the jury:

"You are not to consider what was the duty of this carrier toward Mr. Adams who was killed, but the duty which the defendant owed to these plaintiffs; and the duty which they have the right to exact from the defendant in this case is the same duty which the defendant company owed to the public in general."

In other words, although it should appear that the company in no respect failed in its duty to the deceased, it could yet be held responsible to the widow and son for the damages they suffered by reason of the death. But this is a misconception. Their right of action arises only when his death is caused by "the wrongful act or neglect." If there be no omission of duty to the decedent, his heirs have no claim. Suppose an individual is wantonly assailed and in order to protect his own life is obliged to kill the assailant, may the heirs of the decedent have that act of taking life, rightful as against the decedent, adjudged wrongful as against them, and recover damages from one who did only that which his duty to himself and family required him to do? The statute does not provide that when one's life is taken by another the heirs of the former may recover damages, but only when it is wrongfully taken, that is, when it is taken in violation of the rights of the decedent, wrongful as against him. "Neglect" stands in the same category with "wrongful act." It implies some omission of duty. The trial court in this case charged the jury:

"Negligence to create a liability on the part of parties in fault must be a failure to observe the degree of care and prudence that is demanded in the discharge of the duty which the person charged with the negligence owed under the peculiar circumstances of the case, to the injured party."

As stated in Pollock on Torts, p. 355, quoting from Baron

VOL. CXCII—29

Alderson in *Blyth* v. *Birmingham Waterworks Company*, 11 Ex. 784; 25 L. J. Ex. 213:

" 'Negligence is the omission to do something which a reasonable man, guided upon those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do,' provided, of course, that the party whose conduct is in question is already in a situation that brings him under the duty of taking care."

The two terms, therefore, wrongful act and neglect, imply alike the omission of some duty, and that duty must, as stated, be a duty owing to the decedent. It cannot be that, if the death was caused by a rightful act, or an unintentional act with no omission of duty owing to the decedent, it can be considered wrongful or negligent at the suit of the heirs of the decedent. They claim under him, and they can recover only in case he could have recovered damages had he not been killed, but only injured. The company is not under two different measures of obligation—one to the passenger and another to his heirs. If it discharges its full obligation to the passenger, his heirs have no right to compel it to pay damages.

Did the company omit any duty which it owed to the decedent? He was riding on a pass which provided that the company should "not be liable, under any circumstances, whether of negligence of agents of otherwise, for any injury to the person." He was a free passenger, paying nothing for the privilege given him of riding in the coaches of the defendant. He entered those coaches as a licensee, upon conditions which he, with full knowledge, accepted. He was not a passenger for hire, such as was held to be the condition of the parties recovering in *Railroad Company* v. *Lockwood*, 17 Wall. 357, and *Railway Company* v. *Stevens*, 95 U. S. 655. In the first of these cases Mr. Justice Bradley, who delivered the opinion of the court, closed an elaborate discussion of the questions with these words:

" We purposely abstain from expressing any opinion as to

what would have been the result of our judgment had we considered the plaintiff a free passenger instead of a passenger for hire."

The question then is distinctly presented whether a railroad company is liable in damages to a person injured, through the negligence of its employés, who at the time is riding on a pass given as a gratuity, and upon the condition, known to and accepted by him that it shall not be responsible for such injuries. It will be perceived that the question excludes injuries resulting from wilful or wanton acts, but applies only to cases of ordinary negligence. The facts of this case certainly do not call for any broader inquiry than this. The specific matters of negligence charged are the placing a non-vestibuled car in a vestibuled train, and the high rate of speed at which the train passed around the curve at the place of injury. But non-vestibuled cars are in constant use all over the country— were the only cars in use up to a few years ago—and further, the deceased, having passed over the open platform, knew exactly its condition. As the court charged the jury, "Mr. Adams must be presumed to have known that it was not vestibuled and to have acted with perfect knowledge of the fact." The rate of speed was no greater than is common on other trains everywhere in the land, and the train was, in fact, run safely on this occasion. We shall assume, however, but without deciding, that the jury were warranted, considering the absence of the vestibuled platform and the high rate of speed in coming around the curve, in finding the company guilty of negligence; but clearly it was not acting either wilfully or wantonly in running its trains at this not uncommon rate of speed, and all that can at most be said is that there was ordinary negligence. Is the company responsible for injuries resulting from ordinary negligence to an individual whom it permits to ride without charge on condition that he take all the risks of such negligence?

This question has received the consideration of many courts and been answered in different and opposing ways. We shall

not attempt to review the cases in state courts. Among those which hold that the company is not responsible may be mentioned *Rogers* v. *Kennebec &c. Company*, 86 Maine, 261; *Quimby* v. *Boston &c. Railroad Company*, 150 Massachusetts, 365; *Griswold* v. *New York &c. Railroad Company*, 53 Connecticut, 371; *Kinney* v. *Central Railroad Company*, 34 N. J. Law, 513; *Payne* v. *Terre Haute &c. Railway Company*, 157 Indiana, 616; *Muldoon* v. *Seattle City Railway Company*, 7 Washington, 528; *S. C.*, 10 Washington, 311. This last case was decided by the Supreme Court of the State, in which the Federal court rendering the judgment in controversy was held. The English decisions are to the same effect. *McCawley* v. *Furness Railway Company*, L. R. 8 Q. B. 57; *Hall* v. *Northeastern Railway Company*, L. R. 10 Q. B. 437; *Duff* v. *Great Northern Railroad Company*, Ir. L. R. 4 Com. Law, 178; *Alexander* v. *Toronto &c. Railway Company*, 33 Up. Can. Q. B. 474. Among those holding that the company is responsible are: *Rose* v. *Des Moines Valley Railroad Company*, 39 Iowa, 246, though that case is rested partially on a state statute; *Pennsylvania Railroad Company* v. *Butler*, 57 Pa. St. 335; *Mobile & Ohio Railroad Company* v. *Hopkins*, 41 Alabama, 486; *Gulf, Colorado &c. Railway Company* v. *McGowan*, 65 Texas, 640.

Turning to the decisions of this court, in *Philadelphia & Reading Railroad Company* v. *Derby*, 14 How. 468, and *Steamboat New World* v. *King*, 16 How. 469, the parties injured were free passengers, but it does not appear that there were any stipulations concerning the risk of negligence, and the companies were held guilty of gross negligence. In *Baltimore & Ohio &c. Railway* v. *Voigt*, 176 U. S. 498, Voigt, an express messenger riding in a car set apart for the use of an express company, was injured by the negligence of the railway company. There was an agreement between the two companies that the former would hold the railway company free from all liability for negligence, whether caused by the negligence of the railway company or its employés. Voigt entering into the employ of the express company, signed a contract in writ-

ing, whereby he agreed to assume all the risk of accident or injury in the course of his employment, whether occasioned by negligence or otherwise, and expressly ratified the agreement between the express company and the railway company. It was held that he could not maintain an action against the railway company for injuries resulting from the negligence of its employés. Mr. Justice Shiras, who delivered the opinion of the court, reviewed many state decisions, and concluded with these words (p. 520):

"Without enumerating and appraising all the cases respectively cited, our conclusion is that Voigt, occupying an express car as a messenger in charge of express matter, in pursuance of the contract between the companies, was not a passenger within the meaning of the case of *Railroad Company* v. *Lockwood;* that he was not constrained to enter into the contract whereby the railroad company was exonerated from liability to him, but entered into the same freely and voluntarily, and obtained the benefit of it by securing his appointment as such messenger, and that such a contract did not contravene public policy."

In the light of this decision but one answer can be made to the question. The railway company was not as to Adams a carrier for hire. It waived its right as a common carrier to exact compensation. It offered him the privilege of riding in its coaches without charge if he would assume the risks of negligence. He was not in the power of the company and obliged to accept its terms. They stood on an equal footing. If he had desired to hold it to its common law obligations to him as a passenger, he could have paid his fare and compelled the company to receive and carry him. He freely and voluntarily chose to accept the privilege offered, and having accepted that privilege cannot repudiate the conditions. It was not a benevolent association, but doing a railroad business for profit; and free passengers are not so many as to induce negligence on its part. So far as the element of contract controls, it was a contract which neither party was bound to enter into,

and yet one which each was at liberty to make, and no public policy was violated thereby.

It follows from these considerations that there was error in the proceedings of the Circuit Court and Court of Appeals. The judgments of those courts will be reversed and the case remanded to the Circuit Court with instructions to set aside the verdict and grant a new trial.

Mr. Justice Harlan and Mr. Justice McKenna dissent.