[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 376 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 377 
Although four questions are certified for our determination, we may for convenience reduce them to two. The first arises under the "2nd" separate defense and requires us to decide whether the Federal regulations pleaded in that defense absolve the defendant from any liability in any state court on account of the personal injuries sustained by the plaintiff. The other arises under both the "2nd" and "3rd" separate defenses and calls upon us to determine whether the contracts relieving the defendant from liability are to be governed by the law of this state or by the law of Michigan; and it may be remarked in passing that such an exemption from liability as the defendant here pleads is concededly invalid under the law of Michigan and valid by the law of this state. (Weaver v. Ann Arbor R.R. Co., 139 Mich. 590;Hodge v. Rutland R.R. Co., 112 App. Div. 142; affd., 194 N.Y. 570. ) *Page 379 
The material allegations of the "2nd" separate defense may be paraphrased as follows: The plaintiff entered into a written contract at Jackson, Michigan, with the Grand Trunk Railway Company which provided for the carriage of household goods and two horses from Jackson to Ballston Spa in this state over a joint route established by law over the line of that company, the line of the defendant and the line of the Delaware and Hudson Company, at an agreed rate of compensation pursuant to lawful tariffs, rules and classifications established, published and filed in accordance with the United States laws regulating interstate commerce; the carriers mentioned were engaged in interstate commerce; the contract or contracts were part and parcel of the said tariffs and the rules, regulations and classifications of said common carriers published and filed pursuant to the laws of the United States regulating interstate commerce and in connection with and as a part of said tariff; the plaintiff, "as shipper of said goods and horses," accepted the rate of charges assessed pursuant to said tariffs, which was a reduced rate, and paid the charges, "and in consideration of said reduced rate and in accordance with said tariffs and the said rules and regulations and classifications connected therewith, signed, made and executed the said written contract or contracts; pursuant to said contract or contracts and in consideration of the payment of the lawful tariff charges which were reduced rates because of the said rules and regulations and their acceptance by the plaintiff the said common carriers carried the said goodsand horses, and at the same time and in the freight car wherein said goods and horses were loaded, transported plaintiff free of charges as a caretaker of said horses; the contract or contracts were made for the benefit of all the carriers." Then there are further allegations that "by virtue of said contract or contracts it was agreed by the plaintiff and defendant, `in consideration of the premises' and of the carriage of a person in charge of said *Page 380 
stock upon a freight train of the carrier or its connecting carriers without charge, other than the sum paid for the transportation of the live stock of which he is in charge," the shipper agreed to "indemnify and save harmless such carriers from all liability for personal injuries to him caused by their negligence," and that the agreement of the shipper to indemnify and save harmless the carriers, contains the express stipulation that the plaintiff had the option to ship said live stock at a higher rate for carriage and thus secure a contract more favorable to him, but that he voluntarily chose the lower rate.
Assuming all these allegations to be true, and giving to the pleader the benefit of every fair intendment and inference to be implied therefrom, we find no unequivocal allegation that the part of the contract which relates to the immunity and release of the defendant from liability on account of personal injuries to the plaintiff, was a part of the tariffs filed under the Federal Interstate Commerce Act. This can be demonstrated, we think, by an abbreviated summary of the allegations of the special defenses. It is alleged that a contract was executed for the transportation of the property, consisting of household goods and horses at a rate fixed according to tariffs, etc., duly filed; and that the contract or contract "hereinbefore referred to" were part of such tariffs. It is to be noted that the only contract "hereinbefore" referred to is the one relating to the transportation of property. Then follows the further allegation that the "goods and horses" were carried pursuant to such contract, and "at the same time" plaintiff was carried in a freight car free of charge. The pleader does later add the conclusion that in consideration of the premises and of the carriage of a person in charge of the stock, the plaintiff agreed that there should be no liability on account of personal injuries to him, but there is no allegation that this part of the contract had anything to do with the schedules, tariffs and rates of carriage filed; nor is any such idea fairly inferable *Page 381 
from a fair construction of the pleading. It seems rather to exclude that view. The free transportation of the plaintiff may well have been deemed a consideration for the exemption of the carriers from liability for personal injuries to the person accompanying the live stock, but that does not argue that either of these things was the basis for a reduced rate for the carriage of the property and exemption from liability, under any Federal regulation. The pleader has either inadvertently or skillfully avoided any such averment. If the defendant desires to rely upon that part of the contract relating to its immunity and release from liability for personal injuries, as part and parcel of the schedules, tariffs and rates filed according to law, it should be plainly alleged. Without an unequivocal allegation, we must assume that the question is not presented whether such a condition, constituting part of a legally established interstate rate, is one in respect of which the state courts are shorn of their jurisdiction. We are of the opinion, therefore, that the demurrer to the "2nd" separate defense, in so far as it relates to the question above discussed, should have been sustained.
The "2nd" and "3rd" separate defenses, respectively, set forth an agreement and a release, signed and executed by the plaintiff in Michigan, absolving the carriers from liability for personal injuries to him in consequence of negligence on the part of the carriers. The stipulations are alleged to have been executed in consideration of the carriage of the plaintiff without charge other than the sum paid for the carriage of the live stock, and are obviously a part of the contract. In this regard, the plaintiff's agreement to indemnify and save harmless the carriers, and his release of them, on account of personal injuries to him occasioned by the negligence of the carriers or their servants, are both of the same effect and may be considered together.
They were invalid, as we have stated, in the state of *Page 382 
Michigan, where they were made. The accident out of which this action arose occurred at Elmira in this state, upon the line of the defendant, which was an intermediate carrier. Such contracts are valid in this state. The question is, which law governs the rights of the parties. Preliminarily it may be observed that the action here is ex delicto for an accident occurring in this state; but the rights of the parties are none the less governed by the contract. "Whether the actions are regarded as actions of assumpsit upon the contracts, or as actions upon the case for negligence, the rights and liabilities of the parties must be judged by the same standard. The form of the action concerns the remedy, but does not affect the legal obligations of the parties. In either form of action the liability of the defendant, and the rights of the plaintiffs, are based upon the contracts." (Dyke
v. Erie Ry. Co., 45 N.Y. 113, 118; Lake Shore M.S.R. Co. v.Teeters, 166 Ind. 335; Hutchinson on Carriers [3d ed.], sec. 204.)
The rule is elementary that generally the validity or invalidity of contracts is decided according to the place where they are made. (Story's Conflict of Laws [7th ed.], secs. 242, 243.) "But where the contract is, either expressly or tacitly, to be performed in any other place, there the general rule is, in conformity to the presumed intention of the parties, that the contract, as to its validity, * * * is to be governed by the law of the place of performance." (Id. sec. 280; Dicey Conflict of Laws [2d ed.], pp. 551, 552, 553.) These principles are applicable to contracts of common carriers. The circumstances may vary the application of the rules, but, says Mr. Wharton, "it is a well established prima facie rule — liable, however, to be displaced by circumstances indicating a contrary intention — that the validity of a stipulation, in a contract for the transportation of persons or property from one state or country to another, limiting the carrier's common law liability, is to be determined by the law of the place where the contract was made and the *Page 383 
transportation commenced, without reference to the law of the place of destination: This rule * * * considered as a general rule of private international law applies without reference to the place of the loss or injury, though * * * the place of the loss or injury may affect the question whether the enforcement of the stipulation would be contrary to the public policy of the forum." (2 Wharton's Conf. of Law [3d ed.], sec. 471c; 1 Hutchinson on Carriers [3d ed.], sec. 212; 4 Elliott on Railroads [2d ed.], sec. 1506.)
There is much conflict in the cases in this country, but the great weight of authority supports the doctrine above quoted from the text writers. We think there are no facts or circumstances in the case before us which take it out of the general rule. The contract was made in Michigan, where the carriage was commenced. The destination was in New York, where delivery was to be made. In transit the plaintiff passed through several other states, and the contract was to be partly performed in these intermediate states, no less than in Michigan and New York. The mere fact that delivery was to be made in New York does not denominate that as the particular place of performance, for that place was of no greater importance in the contract than the place of shipment in Michigan, or the intervening states through which the transit was made. In such a case as the one at bar the place of the personal injury should not determine the validity of the contract. If that were the rule it could never be known by what law a contract is to be governed until that important consideration is determined by sheer accident. There may be a different law in every state through which a shipment is to pass, and it cannot be presumed that parties have contracted with reference to such uncertainty.
In Grand v. Livingston (4 App. Div. 589; affd. on opinion below, 158 N.Y. 688) the plaintiff shipped at Boston a carload of horses to Buffalo in this state. The contract contained *Page 384 
a limitation of liability which was illegal in Massachusetts where the contract was made. In an action brought in this state to recover for a loss occurring in transit, it was held that the law of Massachusetts controlled. In Dyke v. Erie Railway Co. (45 N.Y. 113), upon facts not analogous, this court applied this rule to a contract of carriage. In China M. Ins. Co. v. Force
(142 N.Y. 90, 100) a ship was chartered in this country to carry a cargo to the far east. A loss occurred, and in an action to recover it was held that the obligation of the shippers of the cargo was to be determined by the law of the place where the contract of affreightment was made. The case of Curtis v. D.,L. W.R.R. Co. (74 N.Y. 116) does not conflict with the views here expressed. The rule as we have stated it was there recognized, but the case was decided upon the fact that the loss occurred after the baggage had reached its destination in the city of New York, and it was held that the liability of the carrier was to be determined by the law of this state, and not by the law of Pennsylvania where the contract was made.
In Massachusetts the rule is settled that in this class of cases the lex loci contractus controls. In Brockway v.American Express Co. (171 Mass. 159) the question was decided. "The contract was made in Illinois, to be performed in part in that State and in part in other States. The rights of the parties to such a contract are to be determined by the lex locicontractus." In other jurisdictions the law is the same. (Liverpool Gt. W.S. Co. v. Phenix Ins. Co., 129 U.S. 397,453 et seq.; Hale v. N.J. Steam Nav. Co., 15 Conn. 538; Ill.Cent. R.R. Co. v. Beebe, 174 Ill. 13; Western A.R.R. Co. v. Ex. Cotton Mills, 81 Ga. 522; Hazel v. C., M. St. P.Ry. Co., 82 Iowa 477; Davis v. Chicago, M. S.P.R.,93 Wis. 470; Pacific Express Co. v. Foley, 46 Kan. 457, 471;Ohio M. Ry. Co. v. Tabor, 98 Ky. 503.) In England the same rule prevails as is shown by the case of Matter *Page 385 of Missouri S.S. Co. (L.R. [42 Ch. Div.] 321); although there it was held that the law of Massachusetts, where the contract was made, did not apply because the contract contained intrinsic evidences of a mutual intention that it should be governed by the English law. In a few of the states, and in some of the Federal courts, it has been held that such contracts are not controlled by the lex loci contractus. (Hughes v. Penn. R.R. Co.,
202 Pa. St. 222; Pittsburgh, C., C. S.L. Ry. Co. v. Sheppard,56 Ohio St. 68; Smith v. Atchison, T. S.F. Ry. Co.,
194 Fed. Rep. 79; Weir v. Rountree, 173 id. 776.) Of these cases we shall say no more than that we think they are not consistent with sound reason or wise public policy.
The fact that this contract was to be performed by a series of connecting carriers does not, in our judgment, alter the rule. By its terms the contract was entire and indivisible. The answer asserts that the carriage was to be over a joint route established by all the carriers concerned. The part of the contract providing for exemption from liability for personal injuries was by its terms made for the benefit of all the carriers, and the release was to the same effect. The contract made in Michigan was for a continuous carriage to the destination. Each carrier was in effect made a party to the contract, and by the plainest implications from its terms each was to be governed by the same rules of law. If one was liable by the law of Michigan, they all were. The stipulations concerning the shipment of the plaintiff's goods, and his agreement of indemnity and release, are parts of one indivisible contract, the whole of which must be governed by the same law, which is alike applicable to every one of the carriers. They cannot logically be separated, as it was plainly the intention that each carrier was to be in part a recipient of the contractual benefits, and equally a sharer in the contractual obligations.
The order and judgment of the courts below should be *Page 386 
reversed, the questions certified answered in the affirmative, the demurrer to the "2nd" separate defense sustained, with leave to plead over so far as any Federal question is concerned, and the demurrer to the "3rd" defense sustained, with costs in all the courts.
WILLARD BARTLETT, Ch. J., CHASE, CUDDEBACK and HOGAN, JJ., concur; HISCOCK, J., not voting; COLLIN, J., not sitting.
Order and judgment reversed, etc.