If the foregoing views be correct, then it follows that the order appealed from should be reversed, with $10 costs and disbursements, and the application to revoke liquor tax certificate No. 5239 issued to Di Iorio for the year 1914–1915 should be granted. Order filed. All concur.

---

## ANDERSON v. ERIE R. CO.

(Supreme Court, Appellate Division, Third Department. March 8, 1916.)

1. CARRIERS ⬡⟶307—CARRIAGE OF PASSENGERS—LIABILITIES FOR INJURIES—RELEASE.

    The release of liability of a carrier for injuries to a passenger from negligence of the carrier's agents and servants, in consideration of a reduced rate of fare, is valid.

    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1252–1259, 1491; Dec. Dig. ⬡⟶307.]

2. CARRIERS ⬡⟶307—INJURIES TO PASSENGER—RELEASE OF LIABILITY—VALIDITY.

    Even if a release by a passenger, in consideration of reduced fare, of liability of a railroad company, be invalid as to negligence of the company itself or its directors, as distinguished from the negligence of other agents or servants, negligence in permitting a defective rail to be used, unknown to the company, is that of the agents and servants, as to which the release is valid.

    [Ed. Note.—For other cases,. see Carriers, Cent. Dig. §§ 1252–1259, 1491; Dec. Dig. ⬡⟶307.]

Appeal from Trial Term, Tioga County.

Action by Julia M. Anderson, as administratrix of the estate of James A. Anderson, against the Erie Railroad Company. From a judgment for plaintiff, and an order denying its motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Stanchfield, Lovell, Falck & Sayles, of· Elmira (Halsey Sayles, of Elmira, of counsel), for appellant.

· Lynch & Clifford, of Owego (F. W. Clifford, of Owego, of counsel), for respondent.

LYON, J. The question involved upon this appeal is whether the release from liability for negligence, given by plaintiff's intestate to the defendant in consideration of a reduced rate of fare, bars the plaintiff's right of recovery. Plaintiff's intestate was a clergyman. At the time of his death in November, 1913, he was traveling from Elmira to Le Roy upon a clerical ticket for which he had paid $1.20. The regular fare between the two places was $2.35. Upon the back of the ticket, which plaintiff's intestate purchased at Elmira, was the following:

#### "Conditions.

"In consideration of this ticket being sold at a reduced rate, a person accepting and using it expressly agrees to and does thereby assume all risk of accidents and damage to person or property, whether caused by negligence

of the company, or that of its agents or employés or otherwise. And as a condition precedent to the issuing and use thereof, each person represents that he or she is legally entitled to use such reduced rate ticket under all laws governing the same, and agrees that he or she will not use this ticket in violation of any law.

"This ticket is not transferable.

"11/10/13.                             [Signature]   James A. Anderson."

Upon the back of the clerical order issued by the defendant, which by the terms of the ticket plaintiff's intestate was required to present as evidence of his right to travel at the reduced rate of fare at which the ticket was sold, was the following:

## "Conditions.

"(1) This order is not transferable and can be revoked at any time. Duplicate will not be issued.   *   *   *

"(4) This order must be shown to conductors in connection with the ticket issued thereon.

"(5) I accept this order agreeing to be governed by its conditions and by those of the clerical ticket issued to me and accompanying it.

"James A. Anderson."

The name of plaintiff's intestate upon the back of the ticket, as well as upon the back of the order was conceded to be in his handwriting. No claim was made by the plaintiff upon the trial that her intestate did not fully comprehend the conditions to which he had affixed his signature. Being a man of education, it is to be presumed, in the absence of all evidence upon the subject and of any claim to the contrary, that he knew and consented to such conditions.

Within a short distance of Le Roy the train was derailed and plaintiff's intestate killed. The refusal of the court to dismiss the complaint, upon the ground that the plaintiff's intestate was being carried by the defendant under a contract which exempted it from liability, and the exception taken to such refusal, furnish the basis of the appeal from the judgment entered upon the verdict in favor of the plaintiff, and from the order denying the motion of defendant for a new trial. It is not claimed that the derailment was caused by any affirmative act of wrongdoing upon the part of the defendant, or of any of its agents or servants. Concededly it resulted from the breaking of a defective rail over which the locomotive had passed in safety. The basis of plaintiff's claim of right to recovery may be embraced in two propositions—that the release was void as against public policy, and that the negligence causing the accident was that of the defendant itself, and not of its servants.

[1] As to the validity of the release: It must be regarded as established in this state, although at variance with the holdings of very many other states, that a release given by a passenger traveling gratuitously or at a reduced rate of fare is valid. While in the early case of Gould v. Hill, 2 Hill, 623, it was held that common carriers could not limit their liability, or evade the consequences of a breach of their legal duties as such by an express agreement, or by special acceptance of goods to be transported, this doctrine was soon overruled, since which time the decisions of our courts have been uniform in sustain-

ing the effectiveness of such releases, as will be seen by the following references to decisions of our courts:

In the case of Dorr v. Steam Navigation Co., 11 N. Y. 485, 62 Am. Dec. 125, which related to the higher responsibility under the common law for the transportation of property, it was held that there was no controlling consideration of public policy against permitting the giving by a consignee to a common carrier of property of a release limiting liability, and hence that such release was valid.

In the case of Perkins, Adm'x, v. New York Central Railroad Company, 24 N. Y. 196, 203, 82 Am. Dec. 281, it was held that in respect of a gratuitous passenger the carrier might contract for exemption from liability for any degree of negligence of its servants other than that of the board of directors or managers who represent the corporation itself for all general purposes, but could not by contract exempt itself from liability to a passenger for damage resulting from its own willful misconduct or recklessness. In this case the plaintiff's intestate was killed in consequence of the breaking down of a bridge, and the plaintiff gave evidence tending to prove that the bridge was built of unsuitable materials and that some of the timbers were rotten. The court said:

"Parties, in making a contract, must be held to contemplate all the ordinary and possible incidents, accidents, or contingencies which may attend its execution; and such accidents and contingencies must be deemed within the purview of the contract, not as accidents expected, but as accidents possible."

In the case of Smith, Adm'r, v. New York Central Railroad Company, 24 N. Y. 222, it was held that as to a person who must be regarded as a paying passenger, and who was injured by the gross negligence of an agent of the carrier in using an unfit and dangerous car, a provision to the effect that persons riding free did so at their own risk of personal injury, from whatever cause, was void as against public policy.

In the case of Bissell v. New York Central Railroad Company, 25 N. Y. 442, 82 Am. Dec. 369, a leading case, it was held that a common carrier, in consideration of an abatement in whole or in part of his legal fare, may lawfully contract with a passenger that the latter will take upon himself the risk of damage from the negligence of agents and servants, for which the carrier would otherwise be liable; that public policy is satisfied by holding a railroad corporation bound to take the risk when the passenger chooses to pay the fare established by the Legislature; and that, if a passenger voluntarily and for any valuable consideration waives the right to indemnity, the contract is binding.

In the case of Poucher v. New York Central Railroad Company, 49 N. Y. 263, 10 Am. Rep. 364, it was held that the defendant, who had issued to the plaintiff a drover's pass in consideration of his agreement to "take all the risks of personal injury from whatever cause, whether of negligence of defendants, its agents, or otherwise," was exempt from all liability by reason of plaintiff having been injured by a stick of wood negligently thrown from the tender of the engine as he was passing it; his stock already having been loaded.

The opinion in the case of Baltimore & Ohio S. W. Ry. Co. v. Voigt, 176 U. S. 498, 518, 20 Sup. Ct. 385, 392 (44 L. Ed. 560) comments upon the cases of Bissell v. New York Central Railroad, supra, and Poucher v. Same, supra, as holding that:

"No rule of public policy forbids contractual exemption from liability, because the public is amply protected by the right of every one to decline any special contract, on paying the regular fare prescribed by law; that is, the highest amount which the law allows the company to charge."

It was said in Northern Pacific Railway Co. v. Adams, 192 U. S. 440, 24 Sup. Ct. 408, 48 L. Ed. 513, that if a passenger is injured or killed while riding on a pass gratuitously given, which he has accepted with knowledge of the conditions therein, the company is not liable therefor, either to him or to his heirs, in the absence of willful or wanton negligence; that a railroad company is not under two measures of liability, one to the passengers and the other to his heirs. The latter claim under him, and can recover only in case he could have recovered, had he been injured only, and not killed. These last two cases are cited and approved in Santa Fé Railway Co. v. Grant Bros., 228 U. S. 177, 185, 33 Sup. Ct. 474, 57 L. Ed. 787.

In the case of Seybolt v. New York, Lake Erie & Western R. R. Co., 95 N. Y. 562, 573 (47 Am. Rep. 75) it was said:

"It cannot now be disputed that an individual transported over the route of a carrier of passengers may debar himself, by a contract founded upon a sufficient consideration, from any claim to damages for injuries to his person or property occasioned by the negligence of such corporation during the course of transportation."

In the case of Ulrich v. New York Central & Hudson River R. R., 108 N. Y. 80, 15 N. E. 60, 2 Am. St. Rep. 369, it was held that the rights and liabilities of the parties must be governed by the provisions of the indorsement of the pass by which the plaintiff assumed all risk of accident and agreed that the defendant should not be liable under any circumstances, whether by negligence of their agents or otherwise, for any injury to his person or property.

In the case of Kenney v. N. Y. C. & H. R. R. Co., 125 N. Y. 422, 425, 26 N. E. 626, 627, it was said:

"The rule is firmly established in this state that a common carrier may contract for immunity from its negligence, or that of its agents, but that, to accomplish that object, the contract must be so expressed, and it must not be left to a presumption from the language."

A recovery in this case by the plaintiff was affirmed upon the ground that at the time of the injury he was traveling upon defendant's road as an employé of the National Express Company, and hence should be regarded a passenger paying full fare.

In the case of Hodge, Adm'r, v. Rutland Railroad Co., 112 App. Div. 142, 97 N. Y. Supp. 1107, amended 115 App. Div. 881, 100 N. Y. Supp. 764, affirmed 194 N. Y. 570, 88 N. E. 1121, it was held that plaintiff's intestate, a shipper of freight, having, in consideration of a free passage, signed a contract relieving the defendant from liability for personal injury sustained by him, whether caused by the negligence of the defendant or any of its employés, or otherwise,

could not recover, although the death of her intestate was caused by the negligence of the defendant. Plaintiff's intestate was killed in a rear-end collision of two of defendant's trains.

In the case of Gill v. Erie Railroad Company, 151 App. Div. 131, 135, 135 N. Y. Supp. 355, 358, it was held:

"If the plaintiff was a passenger riding gratuitously on this pass, he cannot recover, for it is well settled that a railroad company may, by express contract, relieve itself from liability for the negligence of its servants to one who rides on a free ticket containing such an exemption."

In the case of Fish v. D., L. & W. R. R. Co., 211 N. Y. 374, 382, 105 N. E. 661, it was said that a contract which provided that the plaintiff, who was to be carried without charge other than the sum paid for the transportation of live stock, and by which the plaintiff agreed to indemnify and save harmless such carrier from all liabilities by reason of personal injury sustained by him, "whether the same be caused by the negligence of said carrier or any connecting carrier, or any of its or their employés, or otherwise," was valid in this state.

However, plaintiff's counsel seeks to draw a distinction between the effect of a release indorsed upon a free pass and a release indorsed upon a reduced fare ticket. But in his opinion in the Bissell Case, 25 N. Y. 442, 448, 82 Am. Dec. 369, Judge Selden said:

"So far as the public are concerned, the question of reward is one of indifference; and so far as the parties are concerned, if they are allowed to make the contract at all, they are the judges of the amount of consideration which will compensate them for assuming the risk, whether the whole fare, or half, or an eighth, or any other proportion, or other consideration."

It is not necessary to the validity and effectiveness of the contract of release that the passenger be carried free of all charge, but it is sufficient that a valid reduction of fare satisfactory to the passenger be agreed upon.

[2] As to the second proposition of plaintiff, that the negligence causing the accident was that of the defendant itself, and not that of its servants, and that a release exempting a carrier from liability for its own negligence is void, it is to be observed that the New York cases above cited have established the proposition that a carrier may contract against its own negligent acts, other than its willful and wanton misconduct. However, it was said in the case of Perkins v. New York Central Railroad Co., supra:

"But a distinction is no doubt to be made between the directors or managing officers of a corporation and its subordinate agents. As the former exercise all the powers of the corporation, and are its only direct medium of communication with outside parties, they must, in respect to all its external relations, be considered as identical with the corporation itself. No contract, therefore, can exempt a railroad company from liability for the willful or wanton misconduct or gross recklessness of its directors; but the rule extends to no other officer or agent of the company."

That any negligence resulting in the accident was that of the servants of the company will be seen from a brief review of the evidence. The rail which broke was a standard 50-pound rail, rolled in 1893. It had apparently been used on the Erie main line; but, heavier trains hav-

ing required heavier rails, the rail in question was in 1907 transferred to the Attica single track division, upon which the traffic was much lighter, and for use upon which the undisputed evidence is that the rail was of sufficient weight. It, however, proved to be what is known as a "piped" rail; a condition resulting from a bubble of gas or air imbedded in the ingot being rolled, or stretched into the rail, preventing the sides of the metal, when pressed together, from adhering. The "pipe" fissure or crack, which was about 5 or 6 feet long, ran lengthwise of the rail, and doubtless underneath, but very close to the surface of, the head, and did not extend quite to the end of the rail, where its existence could have been readily detected. The sides of the pipe or crack were rusty, indicating that it was old. It was a disputed question of fact whether any reasonable inspection made prior to the accident would have shown the insufficiency of the rail. Following the breaking of the rail, there was also a crack discovered some 30 inches in length on the outside of the rail upon the underside of the head of the rail, at or very near the angle formed by the head and the web, the sides of which crack were rusty. It was claimed by the plaintiff that a narrow black streak 5 or 6 feet long along the top of the rail, being merely a discoloration of the surface of the metal, showed a depression in the rail, for the reason that this space was not polished by the wheels passing over the rail, and indicated that the rail was piped and defective at that place. The rail had been in use upon the Attica division for six years at the time of the accident, and so far as appears from the evidence its defectiveness was not known or suspected up to that time.

The expert called by the plaintiff, who examined the broken rail the day following the accident, testified that it was impossible to determine whether or not any crack showed on the top of the rail before the accident, and that, if the "pipe" were visible at the surface at the time the rail was made, the railroad company inspectors at the mill would have thrown it out, but that, if not visible, there was no way of telling it until after wear showed some indications of its existence. The witness called by the plaintiff, who relaid the rails in 1907, testified that some of the rails were flattened a very little as the result of previous traffic; that some of them were thrown out; that he laid what he could of them, changing sides, so that the side which had been the inside became the outside when relaid, which was the customary way of relaying rails; that he did not relay any rails which to his knowledge were not good; that any defect in the rail which did not show in the six years of use on the Attica branch could not have been discovered by him when the rail was put in; that he could not identify the rail which caused the accident as one which he laid in 1907, as there might have been several rails in that place since that time, and that as rails proved defective he took them out. The track was ballasted with gravel, the roadbed reasonably well drained, and the ties in reasonably good condition. No evidence was offered by either party as to any inspection of the track, otherwise than as may be gathered from the foregoing testimony that as rails proved defective they were taken out. There is no evidence indicating that any

person connected with the defendant company, officer or servant, knew or suspected that this rail was defective, nor any evidence that any other rail had ever broken, or accident happened, upon that division.

Plainly any negligence causing the accident was that of the servants of the defendant who relaid the rails and had charge of repairing the track. Hence, even under the contention of plaintiff's counsel, the injury suffered by plaintiff's intestate, causing his death, was covered by the release. Nor can it be said that such conclusion is unjust. The decedent had absolute freedom of choice as to what contract he should make, and it was not a matter of public concern which ticket he purchased. He had the right to require the defendant to furnish him a full-fare ticket, and to itself take the risk of his being injured during his journey, or he had the right to accept the offer of the defendant and himself assume the risk of injury, relieving the company therefrom. He freely and voluntarily chose the latter, and, in view of the very small percentage of passengers injured in railroad travel, the nearly 50 per cent. deduction of fare made by the defendant upon clerical tickets might naturally be considered favorably by plaintiff's intestate. The contracts printed upon the back of the ticket and of the order were plain and simple, and in no way ambiguous. The breaking of a rail has long been recognized as one of the more frequent causes of railway accidents, and may well be considered to have been one of the risks intended to be assumed by the traveler, when by executing the contract he assumed "all risk of accidents and damage to person or property, whether caused by negligence of the company, or that of its agents or employés or otherwise." Had the defendant known of the defective condition of this rail, and omitted to immediately replace it, or to disclose its condition to plaintiff's intestate at the time he purchased the ticket, a very different question would be presented. The contract, having been freely and understandingly entered into, cannot now be disregarded.

The judgment and order appealed from must therefore be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.